## THELMA COLLINS *v.* STATE.

### [54 South. 665.]

1. CRIMINAL LAW. *Impartial jury. Conduct of judge.*

Every accused, irrespective of his guilt or condition in life, is entitled to be tried by an impartial jury.

2. SAME.

.Where the presiding judge in the presence of the jury, before whom accused was to be tried by the character of the questions put to accused, brings her cause into contempt, accused is denied a trial before an impartial jury.

3. SAME.

The trial judge must use the greatest care to avoid prejudicing the cause of the state or the defense by his language or conduct.

4. CONDUCT OF JUDGE. *Presumptions.*

The supreme court will not stop to inquire whether the jury was actually influenced by the improper conduct of the presiding judge; if his conduct might have prejudicially affected the jury, the conclusive presumption of the law is that it did so affect their verdict.

APPEAL from the circuit court of Jones county.

HON. PAUL B. JOHNSON, Judge.

Thelma Collins was convicted of unlawful retailing and appeals.

The facts are fully stated in the opinion of the court.

*Bullard & Gavin,* for appellant.

Search, I think, will hardly disclose a more glaringly oppressive deprivation of one's right to a fair and impartial trial. She was arrested late in the forenoon of the 10th day of October and then informed for the first time of the indictment. She at once had subpoenas issued for her witnesses, the only ones by whom she could establish her defense, and the sheriff had scarcely had time

to get out of the court house with them before the case was called for trial. These witnesses, if she had been afforded an opportunity to have them present, would have made out a perfect defense. One of them, Bill Hinton, would have sworn that he was present at the time Chas. Jacobs and Jack Welborne, the state's witnesses, claimed she sold whiskey, and that she sold none. The other J. A. Shed, is her landlord, and would have sworn that she was not living at the place where the state's witnesses testified the person was living when they bought the whiskey. This at least would have proved that if they bought whiskey from any one they were mistaken in the identity of the person who sold it. A more perfect defense could hardly be imagined, and yet the court denied her any time whatever to establish it, saying: "I am going to try the case to-day, if it takes till midnight." He did indeed call the jurors to the box who had heard him browbeat her and insinuate improper motives for the presence of Bill Hinton at her house, and went through the form of convicting her, but it was no trial. If indeed it be called a trial, section 26 of the Constitution is a mockery. And this too immediately after the court had compelled her to take the stand and violate her right under said section not to give evidence against herself in the presence and hearing of the very jurors who tried her.

And compelled her to answer when it could serve no purpose other than to prejudice the jurors against her defense, and force her to give up perhaps the only reason she might have had to remain silent at her trial. All this too after the court had before the same jurors browbeat her and by his manner and questions insinuated improper motives for the presence of Bill Hinton at her house.

And all this was without any bearing on her application for a continuance and was heard by the jurors who

also immediately heard him say, "I am going to try the case to-day, if it takes till midnight."

We most earnestly insist that if Bill Hinton is a white man and she is "a nigger" she was entitled to fair treatment and a fair and impartial trial.

We think it unnecessary to cite authority but out of the multitude of others with which the court is familiar, the following are especially in point:

Section 26, article 3 of the Constitution, wherein it is said: "In all criminal prosecutions the accused shall have a right . . . to have compulsory process for obtaining witnesses in his favor" and a fair trial. She was denied the right to have an opportunity to have even one subpoena served and returned. *Cade* v. *State*, 50 So. Rep. 554, is a much stronger case than this and is exactly in point;

*Montgomery* v. *State*, 85 Miss. 330; *Whitt* v. *State*, 85 Miss. 208; *Hattox* v. *State*, 80 Miss. 186; *Fooshee* v. *State*, 82 Miss. 509; *Leroy White* v. *State*, 45 So. Rep. 611.

*Jas. R. McDowell*, assistant attorney-general, for appellee.

The only other error assigned is that she was not tried by a fair jury because the members of this jury had heard her testimony taken on the motion for a new trial. There is nothing in this point at all, and I will only cite the case of *Whitehead* v. *State*, 52 So. 259, which should settle the point raised by counsel here.

ANDERSON, J., delivered the opinion of the court.

The appellant, Thelma Collins, was convicted of the unlawful sale of intoxicating liquors, and appeals to this court.

The appellant made an application for a continuance on account of the absence of two witnesses. When this application came up for hearing, the court called the appellant to the witness stand, and had her sworn, and

99 Miss.—4

examined her. The examination by the court took place in the presence of the jury before whom the appellant was tried and convicted. 'During her examination by the court, the appellant testified as follows, over the objection of her attorney: "The Court: Q. Bill Hinton (one of the absent witnesses) is a white man? A. Yes, sir. Q. And you are a nigger? A. Yes, sir. Q. He visits your house very frequently, doesn't he? A. No, sir. Q. How often does he come there? A. I owed him for some molasses. Q. Sweet things? A. Yes, sir. Q. Now, wasn't he present there, in the room there, when some of the boys came down there—Bill Hinton? A. No, sir. Q. Never had been there before? A. He had been there before. Q. How many times? A. I bought lots of things from him; he peddles. Q. He had never been in your house? A. He had been in there collecting. Q. How many times? A. I bought some potatoes from him once. Q. Did you pay him the money for them? A. Yes, sir." At the conclusion of her testimony, her attorney stated to the court, "I think, your honor, it would be unfair to try it before the jury here; they have heard the testimony," to which the court responded, "I am going to try the case to-day, if it takes all night." The court then asked the jury if anything came out in the examination of the appellant which would affect them in making up their verdict in the case, to which "some of the jury answered by saying, 'No,' and others by shaking their heads," etc.

The common law, since trial by jury was secured by Magna Charta, the twenty-sixth section of our Constitution, and various criminal statutes of this state, guarantee to a person charged with a crime a fair trial by an impartial jury. This guaranty is to every person, high or low, rich or poor, guilty or innocent. The appellant in this case was denied this right. Here we have the judge, in the presence of the jury before whom the appellant was to be tried, by the character of questions put to

her, bringing her cause into contempt. We reiterate what the court said in *Green* v. *State,* 53 South. 415: "It is a matter of common knowledge that jurors, as well as officers in attendance upon court, are very susceptible to the influence of the judge. The sheriff and his deputies, as a rule, are anxious to do his bidding; and jurors watch closely his conduct, and give attention to his language, that they may, if possible, ascertain his leaning to one side or the other, which, if known, often largely influences their verdict. He cannot be too careful and guarded in language and conduct in the presence of the jury to avoid prejudice to either party. 21 Ency. P. and P. 994, 995, and notes. The court will not stop to inquire whether the jury was actually influenced by the conduct of the judge. All the authorities hold that, if they were exposed to improper influences, which might have produced the verdict, the presumption of law is against its purity; and testimony will not be heard to rebut this presumption. It is a conclusive presumption."

*Reversed and remanded.*