349 So.2d 546 (1977)
Thomas MALLETTE
v.
STATE of Mississippi.
No. 49882.
Supreme Court of Mississippi.
September 7, 1977.
*547 Cumbest & Cumbest, John L. Hunter, Pascagoula, for appellant.
A.F. Summer, Atty. Gen. by Catherine W. Underwood, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before SMITH, BROOM and LEE, JJ.
LEE, Justice, for the Court:
Thomas Mallette was indicted and tried for murder in the Circuit Court of Jackson County. From a conviction of manslaughter and sentence of eighteen (18) years, he appeals here.
Appellant assigns the following errors in the trial of the case:
(1) The trial court erred in failing to grant appellant's motion to dismiss for the reason that two mistrials had resulted because of hung juries, and the trial court erred in failing to allow proof of that fact on behalf of appellant.
*548 (2) The trial court erred in allowing the State to impeach its own witness by improper means.
(3) The trial court erred in failing to sustain appellant's motion for a directed verdict.
(4) The trial court erred in admitting in evidence photographs of the deceased's nude body.
(5) The trial court erred in granting State's Instruction S-4 (a manslaughter instruction) which was not supported by the evidence.
(6) The trial court erred in refusing to grant appellant's Instructions 1-D, 4-D, 6-D, 8-D, 9-D and 11-D.
On March 27, 1974, the Jackson County Sheriff's Office received a call at approximately 3:00 or 3:30 p.m. indicating that there had been a suicide at the Thomas Mallette residence (a small house trailer). Officers responded to the call and, upon arriving at the scene, appellant met them in the front yard and told them that his wife, Betty Jean Mallette, had committed suicide by slipping in the bathtub. Appellant appeared to be upset, his clothes were wet, a pocket was torn, there were some bloodstains on his clothing, and he was intoxicated. When the officers entered the trailer, they found the nude body of Mrs. Mallette on a sofa in the front room. She had been brutally beaten, bruises and cuts appearing over most of her body. Bloodstains were found on clothes and pillowcases and in all the rooms except the bathroom, which contained a shower, lavatory, and commode, but no bathtub. There was no evidence to indicate the deceased had been in the bathroom. Clothes and broken glass were scattered around the trailer, a bloodstained 2 x 4 with hair on it, wrapped in a newspaper, was found in the front room under a pile of clothes. In the same room, a broom was found with blood and red hair (the victim was red-headed) on it. Marks on the floor of the front room indicated it had been swept with a broom. The body appeared to have been wiped or cleaned up, and four-inch marks (bruises) could be seen on it. Autopsy of the body indicated that the causes of death were punctures and collapse of the lungs (by broken ribs) and hemorrhages of the brain. Alcohol content of the body was .265 mg. percent. Appellant gave no statement other than the initial statement that his wife committed suicide by slipping in the bathtub, nor did he testify on the trial. There were no eyewitnesses to the homicide.

I.
Did the trial court err in refusing to dismiss the case because of two previous mistrials?
At the outset of the trial, appellant filed a motion to dismiss the cause on the ground that it had been tried twice before, that both trials resulted in mistrials (hung juries) and that he had been placed in double jeopardy. Appellant attempted to introduce proof of such facts, but the trial court declined to permit same. The record reflects that there were two mistrials and, therefore, there was a proffer of that evidence. Jones v. State, 306 So.2d 57 (Miss. 1975).
Appellant argues that permitting the State to try a defendant twice or more enables the State to "shop" for a jury until an accused is convicted and circumvents the constitutional prohibition against double jeopardy. However, this is a two-way street. Experienced practitioners sometimes refer to the "sinker juror." If this contention were sound, defendant might be able to impanel a sinker on the jury during two trials, and the State could never proceed to a final judgment in the case.
Art. 3, § 22, Miss.Const. 1890 provides:
"No person's life or liberty shall be twice placed in jeopardy for the same offense; but there must be an actual acquittal or conviction on the merits to bar another prosecution."
Suffice it to say, in order for a plea of former jeopardy to avail, it must appear that the defendant was actually acquitted or convicted in a former trial on the merits of the crime for which he is again sought to be convicted. Illinois v. Somerville, 410 *549 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973); Bounds v. State, 271 So.2d 435 (Miss. 1973); Smith v. State, 158 Miss. 355, 128 So. 891 (1930); State v. Moor, 1 Miss. [Walk.] 134 (1823).

II.
Did the trial court commit error in allowing the State to impeach its own witness by improper means?
The State introduced as a witness, Mary Ellen Mallette, the eleven-year-old daughter of appellant and deceased, who testified that she left the trailer on the morning of the homicide at about 7:00 a.m., that her mother and father were in the trailer, and that she did not return during the rest of the day. In the absence of the jury, a stipulation, which was introduced at a previous trial, was placed in the record to the effect that after Mary Ellen Mallette left the trailer at 7:00 a.m., she returned around noon and her mother (deceased) was asleep on the sofa and her father was asleep in bed. Subsequently, the district attorney, who participated in the previous trials but not in this trial, testified to facts told him by Mary Ellen Mallette. They were substantially the same as those contained in the stipulation. The State did not claim surprise or that she was a hostile witness, and no predicate was laid for the testimony. However, no objection was made, and, since failure to enter timely objection constitutes a waiver of the objection, there is no merit in this contention. Kelly v. King, 196 So.2d 525 (Miss. 1967).

III.
Did the trial court commit error in overruling appellant's motion for a directed verdict?
All the evidence introduced on the trial was circumstantial evidence except the statement of appellant that his wife slipped in the bathtub and committed suicide. There was no proof that any persons had been in the trailer other than appellant and the deceased, and all the evidence was sufficient to present a question for the jury to determine whether or not appellant killed his wife. Burrill v. State, 328 So.2d 334 (Miss. 1976); Brown v. State, 293 So.2d 425 (Miss. 1974); Sanders v. State, 286 So.2d 825 (Miss. 1973); Pryor v. State, 239 So.2d 911 (Miss. 1970). The trial court correctly overruled the motion for a directed verdict.

IV.
Did the trial court err in admitting photographs of deceased's body?
The State offered in evidence eight color photographs taken of the victim's body. They were admitted over objection that they were cumulative. Appellant now contends that the photographs were gruesome, that they served no evidentiary purpose and were introduced solely to inflame the jury.
Without question, the photographs depicted a brutal beating of the deceased and were gruesome. However, we are of the opinion that the photographs had evidentiary value. Appellant was convicted of manslaughter and that part of the manslaughter statute which applies here sets forth the words, "killed in a cruel and unusual manner." The photographs show better than testimony (certainly in corroboration of the testimony) that the deceased was killed by being beaten in a cruel, unusual and savage manner. There was admitted in evidence a 2 X 4 stained with blood. It was not identified as the murder weapon, but, upon viewing the body, together with the marks and bruises on it (some were four inches in width) the jury had a right to decide whether or not, in its opinion, the 2 X 4 was used in beating the victim. Admission of photographs in evidence is within the sound discretion of the trial judge, and, unless he abuses that discretion, it is not reversible error. Curry v. State, 328 So.2d 328 (Miss. 1976); West v. State, 218 Miss. 397, 67 So.2d 366 (1953).

V.
Did the trial court commit error in granting State's Instruction S-4, a manslaughter instruction?
*550 Appellant objected to Instruction S-4 on the ground that the evidence did not support it. On appeal, he argues that an essential part of the instruction "in a cruel or unusual manner or by the use of a dangerous weapon" was not included and that it was fatally defective. In Robinson v. State, 223 Miss. 303, 78 So.2d 134 (Miss. 1955), the Court held that omission of the words "by the use of a dangerous weapon," did not constitute reversible error. In that case, it was not controverted that the murder weapon, a 28-gauge shotgun, was a deadly weapon. In the present case, it is uncontroverted that the deceased was killed in a cruel and unusual manner. The same rationale that applied to the Robinson case applies here. A defendant cannot complain of a manslaughter verdict where the evidence would support a conviction of murder. King v. State, 251 Miss. 161, 168 So.2d 637 (1964). The trial court did not commit error in granting the instruction.

VI.
Did the trial court err in refusing to grant appellant's Instructions 1-D, 4-D, 6-D, 8-D, 9-D and 11-D?
The Instruction 1-D is lengthy, but it simply sets forth the principle of presumption of innocence, and the two-theory principle. Instructions 5-D and 13-D cover the two-theory principle and C-13 covers the presumption of innocence principle, and it was not error to refuse that instruction.
Instruction 4-D was not supported by any evidence, and it was properly refused.
Instruction 6-D was repetitive of principles covered in other instructions and was properly refused.
Instruction 8-D, likewise, was covered by other instructions, and Instruction 11-D was a peremptory instruction and both were properly refused by the court.
Instruction 9-D is the one-juror instruction. This Court has held that, in proper cases, it should be granted. Easter v. State, 191 Miss. 651, 4 So.2d 227 (1941); Cartee v. State, 162 Miss. 263, 139 So. 618 (1932). However, Instruction S-1, although it did not go into length on the principle stated in Instruction 9-D, did instruct the jury that twelve jurors must agree upon the verdict. With that instruction, and considering all instructions together, we are of the opinion that it was not error to refuse Instruction 9-D.
There being no reversible errors in the record, the case must be and is affirmed.
AFFIRMED.
PATTERSON, C.J., INZER and SMITH, P. JJ., and ROBERTSON, SUGG, WALKER, BROOM and BOWLING, JJ., concur.