354 So.2d 1114 (1978)
Charles E. MARTIN
v.
STATE of Mississippi.
No. 50164.
Supreme Court of Mississippi.
February 8, 1978.
*1116 Eaves & Eaves, Jackson & Louisville, G. Jyles Eaves, Louisville, John Arthur Eaves, Jackson, Henry L. Rodgers, Louisville, for appellant.
A.F. Summer, Atty. Gen. by Henry T. Wingate, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before SMITH, ROBERTSON and LEE, JJ.
LEE, Justice, for the Court:
Charles E. Martin was jointly indicted with his wife in the Circuit Court of Webster County for manslaughter of Joseph Brian Ramage, his twenty-six-month-old stepson. The trial court sustained a motion for severance, he was tried, convicted and sentenced to twenty (20) years. From that conviction and sentence he appeals here.
Appellant assigns the following errors in the trial below:
(1) The court erred in refusing to direct a verdict in favor of defendant.
(2) The court erred in admitting testimony of the State's expert witnesses.
(3) The court erred in granting the State's Instruction No. 3.
(4) The court erred in permitting a rebuttal witness for the State to testify.
(5) The court erred in admitting photographs of the deceased.
(6) The court erred in failing to grant a change of venue.
On May 5, 1976, Terence Lee Atkins saw appellant running across the yard with a child in his arms. Atkins got into his automobile, caught up with appellant on the street, and took them to the emergency room of the Webster County Hospital. Appellant told Atkins that the child had fallen.
Mrs. Gayle Hitt, duty nurse at the hospital, detected that the child had no respiration, that there were multiple contusions about his head, that both eyes were black and swollen, that his pupils were of unequal size and non-reactive, and that he was not breathing. Appellant told her that the child had fallen from his high chair a short while before. Emergency treatment was administered by attempting to open the child's air passage, a tube was inserted in his treachea and he was flown to the University Medical Center in Jackson. Prior to the Jackson trip, the sheriff of Webster County was called to the hospital, he noted the bruises upon the child's body, and was also told by appellant that the child was injured by a fall from the high chair.
When the child arrived at the University Hospital, he was being artificially breathed and was in a comatose state. He was treated by two pediatricians and a neurologist, but the treatment was ineffective and the child expired after about seven (7) hours. An autopsy was performed in the presence of Drs. Hogan and Ryan, who, along with Dr. Sanford, were the attending physicians. The pathologist reported the cause of death was brain swelling as a result of trauma. Injuries to the child consisted of multiple bruises and abrasions about the head, hemorrhages in the eyes, bruises over the trunk, over the genitalia, back and extremities. No lump or knot was detected on his head.
Dr. Gwendolyn Hogan, an expert in the field of pediatrics and pediatric neurology, testified that, in her opinion, the injuries could not have been caused by falling from a high chair, that there was evidence of multiple injuries, and that it would be impossible for a single fall to produce injuries such as those sustained by the Ramage child. She further testified that the type brain injuries incurred by the child was the result of jostling the brain when the head is battered from side-to-side and which often results in tearing of the bridging vessels and swelling of the brain. Further, that if the child had fallen from the chair, there would have been a noticeable lump or knot on his head. The physicians were unable to find any such condition.
*1117 Dr. Nell Ryan, a specialist in pediatric neurology, who had extensive experience with injured children, testified that, in her opinion, the bruises and injuries sustained by the child could not have been caused by falling from a high chair. She was present at the time of the autopsy, and, in her opinion, the cause of death was brain injuries with cerebral edema (brain swelling).
Dr. Robert Sanford, a neurosurgeon, testified that he was called in by Dr. Hogan for consultation to determine whether anything could be done for the serious brain damage that had occurred. They decided the situation was hopeless and there was nothing surgery could do to help the child. It was his opinion that the child died from brain injuries, which were the result of multiple bruises to the head, and that the injuries could not have occurred from a single fall.
Appellant testified that he was at home alone with the child, that he started to feed him, that a puppy jumped up against the child's high chair, that the child fell out of the chair and struck his head on the floor, which resulted in the fatal injury. He also stated that the child had a big red knot on his forehead where he struck the floor.

I.
Did the court err in refusing to direct a verdict of not guilty for appellant?
The rule is settled that, in passing on a motion for directed verdict, the trial court considers as true all evidence in favor of the State, along with reasonable inferences to be drawn therefrom. Lee v. State, 338 So.2d 395 (Miss. 1976); Glass v. State, 278 So.2d 384 (Miss. 1973). When this rule is applied here, it is clear that the evidence is sufficient to withstand the motion for a directed verdict.
Appellant contends that the child's injury and death resulted from an accident, that is, a fall from his high chair. However, all the evidence reflects that the child had multiple injuries about his head and body and that the cause of death was multiple injuries to the brain which could not have resulted from one fall. Appellant's version of the injuries sustained by the child is in direct conflict with the testimony of expert witnesses who examined and treated the child and is in conflict with the physical facts, and, thus, a question as to appellant's guilt was presented for determination of the jury. Hancock v. State, 209 Miss. 523, 47 So.2d 833 (1950); Weathersby v. State, 165 Miss. 207, 147 So. 481 (1933).
The motion for directed verdict was properly overruled.

II.
Did the court err in admitting testimony of the State's expert witnesses?
Appellant contends that the physicians who attended and treated the child should not have been permitted to testify for the reason that their opinions and testimony invaded the province of the jury which properly should have determined the cause of the child's death.
It is elemental that the testimony of physicians (experts in their fields) is competent on the cause of the patient's death. Likewise, after examining the injuries, they are competent to express opinions as to whether or not a fall could have caused same. Duck v. State, 247 So.2d 689 (Miss. 1971); Tippit v. Hunter, 205 So.2d 267 (Miss. 1967); Rayner v. Lindsey, 243 Miss. 824, 138 So.2d 902 (1962). There is no merit in this assignment.

III.
Did the court err in granting the State's Instruction No. 3?
Instruction No. 3 [See Appendix] for the State advised the jury what constitutes manslaughter. However, neither of the phrases "in a cruel or unusual manner" or "by the use of a deadly weapon," which are contained in the manslaughter statute, appears in the instruction. We have held that omission of the words "by the use of a dangerous weapon" does not constitute reversible error, [Robinson v. State, 223 Miss. 303, 78 So.2d 134 (1955)], and that omission of the words "in a cruel and unusual manner" *1118 does not constitute reversible error where it was uncontroverted that the deceased was the victim of a brutal beating. Mallette v. State, 349 So.2d 546 (Miss. 1977).
The evidence is overwhelming here that the child's death was the result of a cruel and unusual beating, and Mallette controls on this question. Further, no objection was made to the instruction before the trial court, and it is not properly before this Court for review. Johnson v. State, 340 So.2d 738 (Miss. 1976); Patterson v. State, 289 So.2d 685 (Miss. 1974); Jones v. State, 279 So.2d 594 (Miss. 1973).

IV.
Did the court err in admitting rebuttal evidence for the State?
Appellant testified in his own behalf that the child fell from his high chair, which resulted in the fatal injury, and that the child had never fallen from the high chair before. Miss Patricia Alston testified in rebuttal that she visited the home of appellant two days before the child's death. She saw the child at that time with bruises on his face, his tongue was bitten, and his eyes were red. Appellant told her the child had fallen out of the high chair. It is argued that, since Miss Alston testified in rebuttal, appellant had no opportunity to interrogate other witnesses on those matters contained in her testimony. There is no merit in this contention. She might have been the last witness to testify for the State on its case in chief, and no questions could have been asked other State's witnesses about the facts contained in her testimony. The statements testified to by Miss Alston were admissions against interest of the appellant and it was not necessary to lay a predicate for contradicting his testimony. Appellant testified in surrebuttal, and, assuming arguendo the rebuttal testimony was not proper, it was not prejudicial error. Breakfield v. State, 275 So.2d 860 (Miss. 1973). Lastly, appellant did not object to the witness's testimony, and he cannot complain of same here. Baker v. State, 327 So.2d 288 (Miss. 1976).

V.
Did the court err in admitting photographs of the deceased?
Eight (8) color slides were introduced in evidence by the State. They showed bruises, contusions and injuries on the body of the deceased. Those slides had evidentiary value and were important to the State's case in contradiction of the testimony and contention of appellant that one fall from the child's high chair accidentally caused his death. The trial judge did not abuse his discretion in admitting them in evidence. Mallette v. State, supra; Hancock v. State, supra.

VI.
Did the court err in failing to sustain appellant's motion to change venue?
The chronology of events in appellant's trial follows:
(1) The grand jury returned an indictment against his wife and him on May 20, 1976.
(2) The circuit court convened in Webster County on the fourth Monday in May, 1976.
(3) Motion for change of venue was filed by appellant May 24, 1976.
(4) Motion for psychiatric examination was filed by appellant May 24, 1976.
(5) Motion for continuance was filed by appellant May 24, 1976.
(6) Order for psychiatric examination was entered by the court on May 24, 1976, which had the effect of sustaining the motion for a continuance of the case.
(7) The trial court entered an order November 3, 1976, setting the case for trial December 2, 1976, which order was approved by attorneys for appellant.
(8) Motion for special venire was filed by appellant November 23, 1976, and was sustained by the court on the same date.
(9) Order sustaining appellant's motion for severance was entered December 2, 1976.
*1119 The record does not reflect that any order was entered on the motion to change venue. It is the responsibility of the movant to obtain a ruling from the court on motions filed by him and failure to do so constitutes a waiver of same. Grant v. Planters' Bank, 5 Miss. [4 How.] 326 (1840). Considering the procedures enumerated hereinabove, it is apparent that appellant did not pursue the motion for change of venue and that he waived and abandoned same. Consequently, there is no merit in this assignment of error.
The crime for which appellant was convicted is one of the most heinous in criminal law. The maximum sentence of twenty (20) years imposed upon the appellant is lenient punishment when compared to that pronounced in Holy Writ: "But whoso shall offend one of these little ones ... it were better for him that a millstone were hanged about his neck, and that he were drowned in the depth of the sea."
There being no reversible errors in the record, the judgment is affirmed.
AFFIRMED.
PATTERSON, C.J., INZER and SMITH, P. JJ., and ROBERTSON, SUGG, WALKER, BROOM and BOWLING, JJ., concur.

APPENDIX

INSTRUCTION NUMBER S 3
The Court instructs the Jury that Manslaughter is the killing of a human being in the heat of passion, without malice, and without the authority of law and not in necessary self-defense, and if the Jury believes from the evidence in this case beyond a reasonable doubt, and to the exclusion of every other reasonable hypothesis consistent with this innocence, that the defendant, Charles Martin, so killed the deceased, Joseph Brian Ramage, a human being, then it is your sworn duty to find the defendant guilty of Manslaughter.