523 So.2d 42 (1988)
John Wayne EDLIN
v.
STATE of Mississippi.
No. 57562.
Supreme Court of Mississippi.
March 9, 1988.
Rehearing Denied April 27, 1988.
*43 Guy M. Walker, Laurel, for appellant.
Edwin Lloyd Pittman and Mike Moore, Attys. Gen. by Billy L. Gore, Asst. Atty. Gen., Jackson, for appellee.
Before HAWKINS, P.J., and SULLIVAN and ZUCCARO, JJ.
SULLIVAN, Justice, for the Court:
John Wayne Edlin was convicted of the murder of Paula Diane Sims and sentenced to life imprisonment by the Circuit Court of Jones County, Mississippi. Edlin appeals assigning seven alleged errors by the trial court.

I.

DID THE COURT ERR IN INSTRUCTING THE JURY THROUGH THE BAILIFF THAT THE COURT HAD SPENT TOO MUCH TIME ON THIS TRIAL AND FOR THE JURY TO CONTINUE TO DELIBERATE?
The jury retired at 3:30 p.m., to commence their deliberations and at 8:25 p.m., was brought into the courtroom where the foreman informed the trial judge that the jury was still divided, and had been so divided for "a little over two hours." All but one juror indicated that additional time might enable them to reach a verdict.
The judge then charged the jury as follows:
All right. Under those circumstances, I believe I will let you continue to deliberate then.
At approximately 8:52 p.m. the jury reported that they had reached a verdict. After being polled, the jury was discharged.
On October 17, 1985, at a hearing on Edlin's motion for new trial Edna Pippen, one of the bailiffs, testified as follows:
A. Both doors were shut, and I opened the front door, and that's where he knocked. I asked him had they reached a verdict and he said no, and he told me all about them being hung.
Q. What did he tell you about that?
A. He just told me, he said, "We are hung."
Q. All right.
A. He said, "There are two that says they are not going to change their minds."
Q. All right.
A. And then I went to the Judge and told him what he said, and he told me to go back in there and tell them that we had put too much work and time on this case and for them to try again, and that's what I told him.

Q. And the jury was never called out of the room?
A. Oh, no. I just talked to Mr. Harrington, and he talked loud enough that the people on the front row there heard it because my daughter was sitting there and she heard it.
* * * * * *
THE COURT:
Q. Mrs. Pippen, let me ask you something.
A. Yes, sir, I am sorry.
Q. Did I understand you to say that the Court told you to tell the jury that we had spent too much time on this trial and for them to continue to deliberate?
Is that what you said?

*44 A. I told them that  I understood you to say that we had spent a lot of time  not too much  but a lot of time on this case and for them to try again  go back and deliberate some more  work on it some more.
Q. All right.
The record clearly shows that the bailiff told the foreman of the jury that "the judge said we had put too much time and work on this case... ." The State's contention that it cannot be said that the court so instructed the jury is incorrect; as this Court said in Allen v. State, 172 Miss. 472, 159 So. 533 (1935):
It is immaterial whether the judge in the case at bar made the statement as testified to by the bailiff, since it was communicated to the jury as coming from him, and had some effect on them.
Allen, 172 Miss. at 490, 159 So. at 539.
The error complained of by Edlin need never have occurred. In Sharplin v. State, 330 So.2d 591 (Miss. 1976), this Court stated:
If the trial judge feels that there is a likelihood that the jury might reach a verdict, he may return the jury for further deliberations by simply stating to the jurors: "Please continue your deliberations," or he may give the following instruction set forth in the tentative draft of Mississippi Mode Jury Instructions: Criminal, Volume 1, page 50.
I know that it is possible for honest men and women to have honest different opinions about the facts of a case, but, if it is possible to reconcile your differences of opinion and decide this case, then you should do so.
Accordingly, I remind you that the court originally instructed you that the verdict of the jury must represent the considered judgment of each juror. It is your duty as jurors to consult with one another and to deliberate in view of reaching agreement if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion if you are convinced it is erroneous, but do not surrender your honest convictions as to the weight or effect of the evidence solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict. Please continue your deliberations.
We approve the foregoing instruction. It may be given in either criminal or civil cases when the trial judge is confronted by a hung jury. Following publication of this opinion the "Allen Charge" in any of its various forms should not be given. See Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896). (Footnotes omitted).
Sharplin, 330 So.2d at 596.
There are two instructions which properly may be given to a deadlocked jury. Neither of these instructions inform the jury that "too much work and time has gone into this case." The procedure set out in Sharplin v. State, 330 So.2d 591, 596 (Miss. 1976), has been approved by this Court on numerous instances. See Wright v. State, 512 So.2d 679, 682 (Miss. 1987); Gearlson v. State, 482 So.2d 1141, 1143 (Miss. 1986); Isom v. State, 481 So.2d 820, 822 (Miss. 1985); Blanks v. State, 451 So.2d 775, 778 (Miss. 1984); Murphy v. State, 426 So.2d 786, 791 (Miss. 1983). The trial judge in this case departed from the unambiguous procedure outlined in Sharplin and this departure constitutes reversible error.
The message which the bailiff gave to the jurors exerts the same pernicious influence as the Allen charge, which this Court has repeatedly condemned.
The judge's message to the jury also violated Rule 5.03, Uniform Criminal Rules of Circuit Court Practice which provides in part:
The circuit judge may instruct the jury. His instructions shall be in writing and shall be submitted to the attorneys who shall, in accordance with this rule, *45 dictate their specific objections into the record.
Rule 5.03, Uniform Criminal Rules of Circuit Court Practice.
This case is an example of the confusion and misunderstanding which is likely to be engendered when a trial judge attempts to instruct a jury orally through a bailiff. The record reflects that neither the defendant nor his attorneys were present when the trial judge gave this message to the bailiff. It is a matter of fundamental fairness and due process that the defendant is entitled to be apprised of communications between the court and the jury during deliberations. The defendant is also entitled to be represented by counsel during this very important procedure. As it directly affects the purity of the verdict, the error complained of here is presumptively prejudicial; indeed some cases hold the presumption to be irrebuttable. In Collins v. State, 99 Miss. 47, 54 So. 665 (1910), we addressed the issue of a tainted jury and stated:
All the authorities hold that, if they [the jurors] were exposed to improper influences, which might have produced the verdict, the presumption of law is against its purity; and testimony will not be heard to rebut this presumption. It is a conclusive presumption.
Collins, 99 Miss. at 51, 54 So. at 666.
Some mention need be made of the State's contention that the fact that the jury deliberated for approximately three and a half hours after receiving the bailiff's message demonstrates that the remark did not have a coercive effect upon the jurors. The length of subsequent deliberations is often mentioned when addressing assignments such as these but subsequent deliberations alone cannot remove the taint which an improper communication injects into a jury's verdict. In Allen, supra, the improper message was given to the jury at approximately 12:00 noon. The verdict which was delivered the next morning was reversed because of the coercive effect of the prior day's communication. Allen, 172 Miss. at 490-91, 159 So. at 539. Allen relied on an earlier case that reversed a verdict which was reached three days after the jurors were told they would be kept for a week until they could reach a verdict. Lewis v. State, 109 Miss. 586, 68 So. 785 (1915). Subsequent deliberation of the jury does not demonstrate that the improper message had no coercive effect. The improper message, however stale, was fresher than the evidence.
The bailiff's message, clothed with the authority of the court and coupled with the charge to continue deliberating constitutes reversible error.
At about 8:25 p.m., the trial judge, whom the jury understood to be concerned about the amount of work and time which had gone into this case, questioned the jurors in open court about whether additional time would be helpful. Eleven of the jurors indicated that additional time might possibly enable them to reach a verdict. The trial judge said, "All right. Under those circumstances, I believe I will let you continue to deliberate then."
This charge is almost identical to the "please continue your deliberations" charge explicitly approved in Sharplin. This simple charge, although not improper in itself, did nothing to remove the taint of the previous impermissible message delivered by the bailiff and may have in fact emphasized that message. The guidelines of Sharplin and Rule 5.03, Uniform Criminal Rules of Circuit Court Practice, are there for a purpose. These issues arise in cases in which the jury is slow to agree. Anxious for the guidance that they request, jurors are especially likely to rely on supplemental communications thus magnifying the effect of an improper message from the court. These errors need not occur at all  ever. Sharplin very clearly delineated the two proper charges a judge could give to a deadlocked jury. At the very least, a trial judge can reduce to writing all messages to be delivered to the jury and thereby prevent the bailiff from improperly conveying an oral message. As *46 most of our criminal law is ultimately concerned with that which is directly impugned in this case  the purity of the jury's verdict, the improper communication is incurable reversible error.

II.

WAS IT ERROR THAT THE STATE ASKED QUESTIONS AIMED AT THE DEFENDANT'S REPUTATION FOR PEACE OR VIOLENCE OF DEFENSE WITNESSES WHICH INCLUDED PREJUDICIAL INSINUATIONS WHICH HAD NO FACTUAL BASIS AND THE STATE HAD NO INTENTION OF OFFERING ANY EVIDENCE TO PROVE THAT THE QUESTIONS WERE BASED ON ANY FACTUAL EVIDENCE?

VI.

DID THE COURT ERR IN ALLOWING TESTIMONY REGARDING THE BREAKUP OF JOHN WAYNE EDLIN WITH DIANE SIMS ON NOVEMBER 14, ON THE BASIS THAT IT WAS TOO REMOTE IN TIME?
Suffice to say that the State attempted to and was, in the main, allowed to put evidence before the jury of the violent nature of John Wayne Edlin when his character had not been put at issue in the trial.
Further the State offered detailed testimony regarding the termination of the Edlin  Sims relationship. While the fact that a relationship had existed and the fact that it had, to some degree, been terminated was relevant, some of the testimony dealt with alleged acts of misconduct by Edlin. Much of the testimony regarding alleged acts of misconduct by Edlin on November 14, 1984, was irrelevant and prejudicial.
No lengthy discussion of these assignments is necessary as a retrial will be had under the Mississippi Rules of Evidence and the trial judge will be guided by them in his determination of these issues if they arise again.

III.

DID THE STATE SEIZE THE DEFENDANT'S CAR WITHOUT A WARRANT AND THEN SEARCH THE SAME THE FOLLOWING DAY WITHOUT A WARRANT AND WITHOUT PROBABLE CAUSE SO THAT THE EVIDENCE OBTAINED SHOULD HAVE BEEN EXCLUDED?
Sims was killed in an automobile when another car ran her off the road. Officer Howard who went to the scene of the accident found a set of keys with "Walker Toyota" emblazoned on the key ring. Howard was attempting to identify the body and finally he called Edlin who had worked at Walker Toyota, and asked Edlin if he would come look at the keys and try to identify them.
When Howard arrived at Edlin's house he looked at Edlin's 1971 Buick Riviera, and saw that the front bumper of the Riviera appeared to be scuffed and scraped. Also, a rear quarter panel was dented and had "greenish blue" paint on it.
After the body was identified, Howard returned to Edlin's house but found that the Riviera was gone. That afternoon the Jones County Sheriff's office directed that the vehicle be impounded. At about 4:00 p.m. Monday, February 11, 1985, Howard observed the car at Bush's Wrecker Service and appeared before the city judge and presented him with an affidavit for a search warrant. Pursuant to this affidavit a search warrant was issued for the Riviera.
On appeal Edlin contends that the warrantless seizure of his automobile was improper and that the search warrant was not based on probable cause.
Automobiles enjoy somewhat peculiar status under the Fourth Amendment. See Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). Currently, there are two explanations for this status  a lessened privacy interest because a car is not a dwelling, etc., and the mobility of the car. See Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 *47 (1970); California v. Carney, 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985).
The United States Supreme Court has addressed the seizure of vehicles for their potential evidentiary value in only two cases. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) (plurality). In Coolidge, the search warrant which had been procured proved to be invalid and the state argued that the search was nonetheless proper because the automobile was seized as an "instrumentality of the crime." A plurality of the court rejected this argument and stated that such warrantless searches were per se unreasonable in the absence of exigent circumstances. The plurality in Coolidge would also require that any evidence secured under the plain view exception must be "inadvertently discovered."
In Cardwell v. Lewis, 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974), the police seized the car of a suspect who had been arrested from a nearby parking lot and inspected the tires and took a paint sample in an attempt to establish that the car had been used to push another vehicle over an embankment. The court first addressed the legality of the "search" of the exterior of the car and stated:
An underlying factor in the Carroll-Chambers line of decisions has been the exigent circumstances that exist in connection with movable vehicles. "[T]he circumstances that furnish probable cause to search a particular auto for particular articles are most often unforeseeable; moreover, the opportunity to search is fleeting since a car is readily movable." Chambers v. Maroney, 399 U.S. at 50-51 [90 S.Ct. at 1980-1981], 26 L.Ed.2d 419. This is strikingly true where the automobile's owner is alerted to police intentions and, as a consequence, the motivation to remove evidence from official grasp is heightened.
* * * * * *
In the present case, nothing from the interior of the car and no personal effects, which the Fourth Amendment traditionally has been deemed to protect, were searched or seized and introduced in evidence. With the "search" limited to the examination of the tire on the wheel and the taking of paint scrapings from the exterior of the vehicle left in the public parking lot, we fail to comprehend what expectation of privacy was infringed.
Cardwell, 417 U.S. at 590-91, 94 S.Ct. at 2469-70, 41 L.Ed.2d at 335. (Footnotes omitted).
Addressing the legality of the impoundment the court stated:
Concluding, as we have, that the examination of the exterior of the vehicle upon probable cause was reasonable, we have yet to determine whether the prior impoundment of the automobile rendered that examination a violation of the Fourth and Fourteenth Amendments. We do not think that, because the police impounded the car prior to the examination, which they could have made on the spot, there is a constitutional barrier to the use of the evidence obtained thereby.
Cardwell, 417 U.S. at 592-93, 94 S.Ct. at 2470-71, 41 L.Ed.2d at 336.
In Dorsey v. State, 243 So.2d 550 (Miss. 1971), upon which the trial judge relied this Court addressed the warrantless search of an automobile which had been used in a crime and stated:
The sheriff's impounding of the automobile was necessitated because it was used in the crime and provided one of the means by which appellants were apprehended and identified... . The test is whether the search was reasonable, and we hold that it was. Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967); Gordon v. State, 222 So.2d 141 (Miss. 1969); Wright v. State, 236 So.2d 408 (Miss. 1970). The search was not incident to the arrest, but the vehicle was properly held as evidence, since it was an implement or instrument by which the particular crime was committed. Fisher, Search and Seizure, 220-225 (1970).
Dorsey, 243 So.2d at 551.
We conclude that probable cause existed to impound the vehicle pending the *48 issuance of a warrant. There was no warrantless search of the car's interior and therefore, no important privacy interest is implicated in this case. See Cardwell, supra. Further, the car had been moved once and its condition possibly altered. The impoundment, based upon probable cause, did not impermissibly interfere with Edlin's possessory interest in the vehicle. Since a warrant was obtained the next day, the police did not deprive Edlin of the use of the car for an extended period of time based on the warrantless seizure. Under the circumstances of this case the warrantless seizure of Edlin's vehicle was reasonable and violated no constitutional prohibition. See Cardwell, supra; Carney, supra; Dorsey, supra.
To test the sufficiency of the search warrant it is necessary to apply the totality of the circumstance test set out in Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), and adopted by this Court in Lee v. State, 435 So.2d 674 (Miss. 1983). In Lee, Justice Prather stated:
The task of the issuing magistrate is simply to make a practical, common-sense decision whether given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed. Lee v. State, 435 So.2d 674, 676 (Miss. 1983), quoting Illinois v. Gates, 462 U.S. at 238, 103 S.Ct. at 2332, 76 L.Ed.2d at 548 (1983).
Since Lee, the totality of the circumstances test has been routinely applied by this Court.[1]
We find that probable cause existed for the issuance of the warrant and this assignment of error is without merit.

IV.

DID THE COURT ERR IN REFUSING TO GRANT INSTRUCTION D-12?
Edlin assigns as error the trial judge's failure to grant the following instruction:
JURY INSTRUCTION D-12
You are instructed that it is the duty of each and every member of the jury in this case to decide the issues presented for himself and if, after a careful consideration of all of the evidence in the case and the instructions of the Court on the law and free consultation with your fellow jurors, there is any single juror who has a reasonable doubt of the defendant's guilt it is your duty under oath to stand by your conviction and favorable to a finding of "not guilty." You should never yield your conviction simply because every other single one of the jury may disagree with you.
The trial judge refused Instruction D-12 and stated, "It is covered by the court's instruction." The State concedes that the so called "one juror" instruction should be granted upon request in proper cases but the State argues that the refusal of the single juror instruction is not error where the principles of that instruction are contained in other instructions. See Mallette v. State, 349 So.2d 546, 550 (Miss. 1977). In Mallette, we addressed the failure to give a one juror instruction and said:
Instruction 9-D is the one-juror instruction. This Court has held that, in proper cases, it should be granted. Easter v. State, 191 Miss. 651, 4 So.2d 227 (1941); Cartee v. State, 162 Miss. 263, 139 So. 618 (1932). However, Instruction S-1, although it did not go into length on the principle stated in Instruction 9-D, did instruct the jury that twelve jurors must agree upon the verdict. With that *49 instruction, and considering all instructions together, we are of the opinion that it was not error to refuse Instruction 9-D. Mallette, 349 So.2d at 550.
See also, Gearlson v. State, 482 So.2d 1141, 1142 (Miss. 1986).
In this case the State contends that the court's instruction which stated:
Both the State of Mississippi and the defendant have the right to expect that you will conscientiously consider and weigh the evidence and apply the law of the case and that you will reach a just verdict regardless of what the consequences of such verdict may be.
sufficiently instructed the jury in this regard.
In this contention the State is wrong and this case is distinguished from Mallette, in that the Edlin jury was never instructed that their verdict must be unanimous. Nothing in the court's instructions remotely resembles the single juror instruction requested by Edlin. Where a jury in a criminal case is not instructed that their verdict must be unanimous, then a single juror instruction is proper and in this case the jury deliberated for an extended period of time without the benefit of either instruction. Therefore, the failure to grant the "single juror instruction" under these circumstances is reversible error.

V.

DID THE COURT ERR IN NOT PROVIDING THE DEFENDANT WITH COPIES OF ALL DOCUMENTS INTRODUCED BY THE STATE INTO EVIDENCE?
The details of this assignment need not be discussed for while error was committed in the refusal of the State to provide the defendant with certain graphs used by an expert witness for the State, this error need not reoccur at retrial.

VII.

THE VERDICT WAS NOT SUPPORTED BY THE EVIDENCE.
Under this assignment of error Edlin seeks to attack the sufficiency of the evidence which underlies the verdict. This assignment of error is unsupported by any legal authority and need not be considered by this Court. See Jones v. State, 481 So.2d 798, 804 (Miss. 1985); Pate v. State, 419 So.2d 1324, 1326 (Miss. 1982); Ramseur v. State, 368 So.2d 842, 844 (Miss. 1979). When the voluminous evidence in this case is viewed in the light most favorable to the State this assignment of error is without merit. See Jenkins v. State, 483 So.2d 1330, 1332 (Miss. 1986); Harper v. State, 478 So.2d 1017, 1019 (Miss. 1985). This assignment of error is without merit.
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.
NOTES
[1] See Lockett v. State, 517 So.2d 1317, 1324 (Miss. 1987); Alexander v. State, 503 So.2d 235, 239 (Miss. 1987); Seales v. State, 495 So.2d 475, 478 (Miss. 1986); Drane v. State, 493 So.2d 294, 298-99 (Miss. 1986); Harper v. State, 485 So.2d 1064, 1065 (Miss. 1986); Garvis v. State, 483 So.2d 312, 314 (Miss. 1986); Jones v. State, 481 So.2d 798, 800 (Miss. 1985); Walker v. State, 473 So.2d 435, 438 (Miss. 1985); Breckenridge v. State, 472 So.2d 373, 376 (Miss. 1985); McCommon v. State, 467 So.2d 940, 941 (Miss. 1985); Hester v. State, 463 So.2d 1087, 1090 (Miss. 1985).