610 So.2d 1139 (1992)
Henry BRANTLEY,
v.
STATE of Mississippi.
No. 90-KA-0590.
Supreme Court of Mississippi.
December 3, 1992.
William M. Frisbie, Inverness, for appellant.
Michael C. Moore, Atty. Gen., Charles W. Maris, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before DAN M. LEE, P.J., and SULLIVAN and McRAE, JJ.
DAN M. LEE, Presiding Justice, for the Court:
This is an appeal from the Washington County Circuit Court by Henry Brantley following his conviction for the crimes of armed robbery and rape. Brantley was sentenced to twenty (20) years for armed robbery and to thirty-five (35) years for rape, the sentences to run consecutively, in the custody of the Mississippi Department of Corrections. Brantley assigns as error the following:
I. The trial court erred in its oral comments/instructions to the jury after submission of the case to the jury.
II. The trial court erred when it overruled Brantley's motion during trial to ban television cameras from the courtroom.
After a review of the record and briefs in this case, we find that the lower court erred as to issue I, in its instructions to the jury, and as to issue II, in its overruling of appellant's motion to ban television cameras from the courtroom. We reverse appellant's conviction for armed robbery and rape and remand to the Washington County Circuit Court for proceedings not inconsistent with this opinion.

FACTS
On Saturday, March 12, 1988, at approximately 10:20 a.m., P.W.[1] arrived at Remember Me Flower and Gift Shop, the florist shop which she owned and operated, in Leland, Mississippi, to open up for business. A black male entered the shop shortly thereafter wearing a heavy jacket, *1140 gloves, and a cap described by P.W. as being a "toboggan." P.W. thought this was odd as this particular March 12 was a very warm day. Without speaking a word, the man presented a pot of chrysanthemums to her for purchase. He removed one of his gloves and handed her a $20 dollar bill to pay for the purchase. When she opened the cash register, the man stuck a 12-inch knife with a taped handle against her back and nodded toward the register. P.W. then stuffed all of the bills from the register, over $700, into the pockets of the man's jacket. The man next pointed to the change remaining in the register, which P.W. put in a white paper bag for him. P.W. was then forced into the rear of the store near a bathroom area where the man ripped off her clothing and forcibly raped her. During the robbery and the rape, the man never spoke a word.
When she heard the chimes on the front door jingle, P.W. assumed that her assailant was leaving. She put her clothes back on, ran to a nearby package store, and called the police. P.W. saw her assailant on the corner as she fled her shop, but by the time the police arrived he was gone.
After being examined by a physician and a rape test was performed, P.W. viewed several books of mug shots but failed to identify her assailant. However, deafmute Henry Brantley was later arrested (and subsequently convicted and sentenced to thirty-five years in prison) for robbing a convenience store in Greenville. Because the descriptions of the robber and the knife used in the Greenville robbery were similar to those of the assailant and the knife used in the Leland rape and robbery, Leland Police officers brought P.W. mug shots of several black males, including a photograph of Brantley. P.W. identified Brantley as her assailant in both the photo line-up and in a subsequent live line-up.
On July 13, 1988, Brantley was indicted for the armed robbery of the Remember Me Flower and Gift Shop and the rape of the shop's proprietor, P.W. Brantley was arraigned March 23, 1989, and, through the services of an interpreter, pled not guilty to the charges against him.
Brantley's first trial ended in a mistrial on November 3, 1989. The second trial began on May 7, 1990, in Washington County Circuit Court. During the course of the trial the trial judge overruled Brantley's objections to the presence of television cameras in the courtroom. However he did clear the courtroom of all spectators during the victim's testimony, with the exception of Brantley's mother and the television cameras, and ordered the television crews to avoid broadcasting the victim's name, her likeness, or any of her testimony.
On Tuesday, May 8, the case was submitted to the jury for deliberations. At some unspecified time during the afternoon the jurors sent the trial judge a note saying: "We cannot reach a verdict. Our vote is 5 guilty 7 not guilty. With no one willing to change their mind." Brantley moved for a mistrial which the trial judge denied. The record does not reflect what response, if any, the trial court gave the jury at this time.
Later that afternoon, again at an unspecified time, the jury sent a second note to the trial judge, this time stating: "This jury is at an impasse. The vote has remained the same after much talk and study of the evidence. No one shows any evidence that they will change their mind or their vote. If we must continue our deliberation we would prefer to continue tomorrow." The trial judge called in the jury and told the jurors that he wasn't satisfied that they had discussed the case long enough, stating "I'm going to direct you to return to the jury room and to continue your deliberations."
The jury recessed for the night without reaching a verdict, and was sequestered. One of the jurors sent the judge a note telling him that one of the deputies who had driven her to her home to get clothing had spoken to her about Brantley. At 10:30 a.m. on Wednesday, May 9, the judge brought the juror in and questioned her regarding what had been said to her about Brantley. The deputy reportedly told the juror, "Well, this guy here, I know him." The juror stated that she was in no way *1141 influenced by the remark "because I had already made my mind up from the evidence and testimonies. My mind's made up already, so that didn't have any effect on me. But it's just the idea that this is supposed to be, you know, confidential, secure, or whatever."
Brantley again moved for a mistrial, and again the motion was denied by the trial judge. Then Brantley's attorney stated the following:
I would ask that you bring back  that you give them an Allen charge, that you do not state to them in any manner that they must reach a verdict. I think to imply that is inviting error in the proceeding. That we'd be a lot better off if we just used an Allen charge, and if you're going to continue to 
(BY THE TRIAL JUDGE): I'm not going to give them an Allen charge ... Not at this time, anyway. I'm going to just explain to them what's gone on.
The trial judge then brought the jurors back into the courtroom, and he addressed them in the following manner:
Ladies and gentlemen, I received your communication indicating that someone had made some remark to one of the jurors. And I have spoken with that juror, and I have concluded from everything that she's told me about the matter that it was a harmless statement which has had no influence on her whatsoever. She has assured all of us of that fact. Now, she did say something during the course of our discussion that did cause me some concern and I want to review this with you. She said that she had already made her mind up. At this point I don't think anybody ought to have their mind made up because you have not reached a verdict. If all 12 of you can agree on a verdict, that's when everybody's mind ought to be made up.
In the meantime, I'm going to ask you to seriously listen to and consider the views of all the other 11 jurors. Now, there were, oh, some perhaps 8 or 10 witnesses who testified in this case and I think 25 or more exhibits were introduced into evidence. I think it's going to take some considerable time for you to maturely and soberly review the testimony of each witness, the significance and impact of that testimony, its weight and credibility with you. And the same mental processes must be applied to each exhibit offered and received into evidence, its significance and impact on your mind on this case. So I'm going to ask you to continue your deliberations, to listen to each other's views, consider all the testimony and the exhibits, and see if you can reach a unanimous agreement. As I said yesterday, all the persons involved in presenting the case to you have worked a long, long time to get this case ready to present to a jury and so I'm going to ask for some more of your time in considering the matter and see whether you can reach a unanimous agreement. Thank you very much. I'll ask you to retire to the jury room.
Brantley's attorneys again moved for a mistrial, on the grounds that the judge improperly commented upon the evidence "so as to lend more weight to the case for the prosecution" by "pointing out that there have been so many witnesses and so much evidence," when all of the evidence and all but one of the witnesses were introduced or testified on behalf of the State. The trial judge denied the motion.
At 1:35 p.m. that same day (the 2nd day of deliberations), the jury returned with a unanimous guilty verdict on both the armed robbery and the rape charges. In the bifurcated sentencing phase, the jury sentenced Brantley to "less than life" on each conviction after only 10 minutes of sentencing deliberation. On Thursday, May 10, the trial judge sentenced Brantley to serve two consecutive sentences for his crimes, 20 years for the armed robbery and 35 years for rape. This appeal followed.

LAW

I. The trial court erred in its oral comments/instructions to the jury after submission of the case to the jury.
On appeal, Brantley charges error in the trial judge's comments/instructions *1142 to the jury after submission of the case to the jury and urges reversal. This matter is controlled by our holdings in Edlin v. State, 523 So.2d 42 (Miss. 1988) and Sharplin v. State, 330 So.2d 591 (Miss. 1976). In Edlin, the defendant was being tried for murder. During deliberations, a bailiff knocked on the door of the jury room and was told the jury was unable to reach a verdict because two members would not change their minds. The bailiff reported this to the judge. The judge told the bailiff to tell the jurors, and the bailiff so told the jurors, that "we have put too much work and time on this case and for them to try again." Edlin, 523 So.2d at 43. In reversing the subsequent conviction, we held:
The error complained of by Edlin need never have occurred. In Sharplin v. State, 330 So.2d 591 (Miss. 1976), this Court stated:
If the trial judge feels that there is a likelihood that the jury might reach a verdict, he may return the jury for further deliberations by simply stating to the jurors: "Please continue your deliberations," or he may give the following instruction set forth in the tentative draft of Mississippi Model Jury Instructions: Criminal, Volume 1, page 50:
I know that it is possible for honest men and women to have honest different opinions about the facts of a case, but, if it is possible to reconcile your differences of opinion and decide this case, then you should do so.
Accordingly, I remind you that the court originally instructed you that the verdict of the jury must represent the considered judgment of each juror. It is your duty as jurors to consult with one another and to deliberate in view of reaching agreement if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion if you are convinced it is erroneous, but do not surrender your honest convictions as to the weight or effect of the evidence because of the opinion of your fellow jurors or for the mere purpose of returning a verdict. Please continue your deliberations.
We approve the foregoing instruction. It may be given in either criminal or civil cases when the trial judge is confronted with a hung jury. Following publication of this opinion the "Allen Charge" in any of its various forms should not be given. See Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896). (Footnotes omitted).

Sharplin, 330 So.2d at 596.
There are two instructions which properly may be given to a deadlocked jury. Neither of these instructions inform the jury that "too much work and time has gone into this case." The procedure set out in Sharplin v. State, 330 So.2d 591, 596 (Miss. 1976) has been approved by this Court on numerous instances. See Wright v. State, 512 So.2d 679, 682 (Miss. 1987); Gearlson v. State, 482 So.2d 1141, 1143 (Miss. 1986); Isom v. State, 481 So.2d 820, 822 (Miss. 1985); Blanks v. State, 451 So.2d 775, 778 (Miss. 1984); Murphy v. State, 426 So.2d 786, 791 (Miss. 1983). The trial judge in this case departed from the unambiguous procedure outlined in Sharplin and this departure constitutes reversible error.

Edlin, 523 So.2d at 44.
The procedure we set forth in Edlin and Sharplin for instructing a deadlocked jury is clear and unambiguous. The trial judge's departure from the guidelines of Edlin and Sharplin is clear error. The State all but concedes that the trial judge's charge to the jury was improper. However, the State argues that under the peculiar facts of this case an error such as this is not presumptively prejudicial or incurably reversible. In other words, the State argues for affirmance based on harmless error. This we cannot do. In addressing the issue of a tainted jury, we held in Collins v. State, 99 Miss. 47, 54 So. 665 (1910), cited in Edlin:

*1143 All the authorities hold that, if they (the jurors) were exposed to improper influences, which might have produced the verdict, the presumption of law is against its purity; and testimony will not be heard to rebut this presumption. It is a conclusive presumption.
Collins, 99 Miss. at 51, 54 So. at 666, cited in Edlin, 523 So.2d at 45.
We know that early in the deliberations in the instant case the jurors became deadlocked at a vote of seven in favor of acquittal, five in favor of conviction. We cannot conclude with confidence that the judge's spontaneous charge did not taint the jury and indeed, under the facts of this case, such arguments seem unlikely.
Brantley is currently incarcerated under a separate 35-year sentence for the Greenville armed robbery conviction, so the State will have ample time to re-try him, should it decide to do so. However, the trial judge's failure to follow the clear and unambiguous procedure for instructing a deadlocked jury as set forth in Edlin and Sharplin is clear error and commands reversal.

II. The trial court erred when it overruled Brantley's motion during trial to ban television cameras from the courtroom.
Uniform Criminal Rules of Circuit Practice Rule 8.06 provides that "No cameras or broadcasting will be permitted in the courtroom without the prior written approval of the court." The trial judge indicated that he allowed cameras with the stipulation to the television crews that broadcast of the victim's name or testimony was prohibited. Unfortunately these stipulations were not included in the record. But even if these conditions were indeed in written form the analysis of this issue does not end with Rule 8.06. Mississippi Code of Judicial Conduct Canon 3(A)(7) and its restrictions and limitations on the use of broadcasting, photographic and recording equipment in courtrooms during sessions of court must be addressed.
Canon 3(A)(7), Mississippi Code of Judicial Conduct, reads as follows:
A judge should prohibit broadcasting, televising, recording or photographing in courtrooms and areas immediately adjacent thereto during sessions of court, or recesses between sessions, except that a judge may authorize:
(a) the use of electronic or photographic means for the preservation of evidence, for the perpetuation of a record, or for other purposes of judicial administration;
(b) the broadcasting, televising, recording, or photographing of investitive, ceremonial, or naturalization proceedings;
(c) the photographic or electronic recording and reproduction of appropriate court proceedings under the following conditions:
(i) the means of recording will not distract participants or impair the dignity of the proceedings;
(ii) the parties have consented, and the consent to being depicted or recorded has been obtained from each witness appearing in the recording and reproduction;

(iii) the reproduction will not be exhibited until after the proceeding has been concluded and all direct appeals have been exhausted; and
(iv) the reproduction will be exhibited only for instructional purposes in educational institutions.
Mississippi Code of Judicial Conduct, Canon 3(A)(7) (emphasis added).
The only Mississippi precedent to which we can look where the presence of television cameras (and still cameras) in the courtroom was at issue is a petition for a writ of prohibition which was denied by this Court on December 16, 1991. The petition, In re The Associated Press, No. 91-M-1138, asked this Court to issue an order prohibiting the Circuit Court of Hinds County from relying upon the provisions of Canon 3(A)(7) to enforce a camera exclusion order in the trial proceedings of State v. de la Beckwith, No. 90-3-495. That petition was denied with James L. Robertson, J., dissenting.
The purpose of Canon 3(A)(7) is to keep television cameras and other photographic *1144 equipment out of circuit court proceedings without the consent of all parties and witnesses. In the case at bar the defendant Brantley objected three times during the course of the trial to the presence of television cameras. Having lacked the consent of Brantley, the trial court erred in allowing the presence of television cameras within the courtroom during the course of the trial.
Accordingly we reverse and remand for proceedings not inconsistent with the opinion of this Court with all costs of this appeal to be paid by Washington County.
REVERSE AND REMAND FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.
ROY NOBLE LEE, C.J., HAWKINS, P.J., PRATHER, SULLIVAN and BANKS, JJ., concur.
McRAE, J., specially concurs with separate written opinion.
PITTMAN and ROBERTS, JJ., not participating.
McRAE, Justice, specially concurring:
I concur in the results reached by the majority opinion. Although Canon 3(a)(7) is effective, I think it is time to revise Canon 3(a)(7) as it is outdated. Under the present technology, a camera should be allowed to record the trial, but safeguards must be in place. Only the litigants have to consent, not the witnesses.
NOTES
[1] The name of the victim is omitted to protect her identity.