275 So.2d 97 (1973)
Walter H. BIELLER, Sr.
v.
STATE of Mississippi.
No. 47194.
Supreme Court of Mississippi.
March 19, 1973.
Rehearing Denied April 9, 1973.
*98 Howard A. McDonnell, Biloxi, Eddie I. Jones, Bay St. Louis, for appellant.
A.F. Summer, Atty. Gen., by J.B. Garretty, Special Asst. Atty. Gen., Jackson, for appellee.
SMITH, Justice.
Walter H. Bieller, Sr. was indicted for murder. At the conclusion of his trial in the Circuit Court of Hancock County upon that charge, the jury returned a verdict of guilty of manslaughter. Thereupon, he was sentenced to serve a term of 15 years in the penitentiary. He appeals.
Following his indictment, Bieller's counsel filed a motion requesting "a psychiatric examination at the Mississippi State Hospital (for the insane) where he may be examined by competent psychiatrists to determine the degree, if any, of his mental illness." This request was granted by the trial court.
After a period of observation at the hospital, a lengthy written report was transmitted to the trial judge which recited: "It is the unanimous opinion of the staff that he (Bieller) should receive the diagnosis of (1) Without Psychosis, and (2) Alcohol Addiction. At no time during his stay here at the hospital did Mr. Bieller show any psychotic thinking or behavior." No further action was requested by appellant with respect to this matter in the trial court.
A plea of not guilty having been entered, a special venire was drawn, a jury duly empaneled, and the case went to trial. Without detailing the evidence, only one reasonable conclusion can be drawn from it: On the evening of November 17, 1970, Bieller killed a woman (with whom he had been living) by shooting her once in the head, at close range with a 410 gauge shotgun, as she sat at a table in his home.
The only defense offered by Bieller may be summarized as being that, as to the occasion in question, he had suffered a complete loss of memory and could not remember anything at all about it. This loss of memory is attributed by Bieller to an overindulgence in alcoholic beverages, to the drinking of which to excess he was addicted. Several questions are now raised.
It is argued that a hearing should have been conducted upon Bieller's mental competence. However, none was requested in the trial court. Moreover, Bieller testified at considerable length, both on direct and cross-examination, and there is nothing in his testimony to indicate that he was irrational or suffering from any mental impairment or psychosis, or incapable of conferring intelligently with his counsel. The fact that he insisted that he remembered nothing of the occasion, which fact was attributed to excessive drinking, cannot be so considered. The record lends no support whatever to the proposition that Bieller was mentally incapable of standing trial.
An instruction was requested on Bieller's behalf, which the trial court declined to grant, dealing with his condition at the time of the homicide in these words:
The Court instructs the Jury for the Defendant that if you believe from the evidence that the Defendant was drunk or unconscience [sic] from any cause, at the time of the shooting of the Deceased and knew nothing about it and do not *99 know what actual [sic] happened, then it is your sworn duty to return a verdict of "NOT GUILTY".
There was no evidence that defendant's claimed inability to remember was attributable to anything other than to his excessive drinking, that is, as mentioned in the instruction, to being drunk. All the evidence shows, without dispute, that Bieller's behavior, both before and after the shooting, was that of a man who had been drinking rather heavily. His conduct, however, was not that of one "unconscious from any cause" nor of one who did not know what was happening. It was not error to refuse to grant the requested instruction.
On the afternoon of the shooting, Bieller had called at his daughter's home to borrow ten dollars and had complied with her request to return after her husband came home so that he might borrow the money from her husband. He did this, borrowed the ten dollars and left in his automobile. After the shooting, he drove some four or five miles from his home, where the homicide had occurred, to that of his daughter where he stated clearly that he had killed the deceased. His behavior was that of a man who was under the influence of intoxicants but there was nothing to indicate that he was insane or unconscious or that he did not know what he was doing. One of Bieller's witnesses had said that he had seen Bieller drunk but never to a degree where he did not know where he was.
The court refused the instruction as the evidence bearing upon Bieller's condition at or about the time of the homicide did no more than raise a question as to the degree of his voluntary intoxication. In this situation it was for the jury to say whether Bieller was intoxicated to such an extent that he was incapable of forming the malicious intent, or "malice aforethought" necessary in the crime of murder. The jury gave Bieller the benefit of this and found him guilty of manslaughter only.
Nor did the trial court commit error in granting State's instruction number 5, now complained of, which was in the following words:
The Court instructs the jury for the State that voluntary intoxication on the part of a slayer does not necessarily excuse a homicide, but that at most it reduces the degree of the crime from murder to manslaughter. The Court further instructs the jury for the State that for voluntary intoxication on the part of the slayer to reduce a crime which would otherwise be murder to manslaughter, it must be intoxication of such a degree as to render the slayer incapable of forming a deliberate design and intent ot [sic] kill.
The applicable rule is stated in 22 C.J.S. Criminal Law § 70 (1961) as follows:
Temporary insanity resulting from use of intoxicants, however, may be sufficient to deprive accused of the capacity to entertain a specific intent essential to commission of a particular crime, which is just another way of stating the rules, ... to the effect that drunkenness does not excuse crime but may preclude the existence of a specific mental condition essential to commission of a particular kind or degree of offense.
As for the amendment by the trial court of an instruction tendered by the appellant, the amendment appears to have been proper and, the appellant having accepted the instruction as amended, and as the manslaughter verdict shows, having obtained the benefit of it, cannot now complain. This Court has held repeatedly that the acceptance of an instruction after its amendment by the trial court amounts to a waiver of an objection to the amendment.
Other matters assigned and argued are without merit.
*100 The record amply supports the conviction and the judgment appealed from must be affirmed.
Affirmed.
GILLESPIE, C.J., and PATTERSON, SUGG and BROOM, JJ., concur.