420 So.2d 1055 (1982)
Jerry Lynn YOUNG
v.
STATE of Mississippi.
No. 53586.
Supreme Court of Mississippi.
September 29, 1982.
Rehearing Denied November 10, 1982.
Gene Barton, David O. Butts, Jr., Tupelo, for appellant.
*1056 Bill Allain, Atty. Gen. by Charles W. Maris, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before PATTERSON, C.J., and ROY NOBLE LEE and PRATHER, JJ.
PATTERSON, Chief Justice, for the Court:
Jerry Lynn Young was convicted of armed robbery and sentenced to thirty years in the Mississippi Department of Corrections by the Circuit Court of Lee County. He appeals from this conviction and sentence.
On the afternoon of March 17, 1980, the Presley Heights Branch of the Bank of Mississippi in Tupelo was robbed by a masked man carrying a sawed-off shotgun. The robbery lasted about two minutes following which the gunman fled in a blue and white automobile just as Police Officer Williams arrived. Williams as well as two of the three bank employees present were unable to identify the robber, however, the remaining employee, Mrs. Hoard, testified the holes in the mask permitted a view of the robber's glasses, eyes, nose, mouth, the side of his face and the color of his hair, and from this she identified Young in court as the robber. On cross-examination she stated that she had first identified Young when shown several photographs by Officer Crider which included one of Young. An objection and motion for a mistrial were interposed to the identification testimony and argument made that the in-court identification was improper because it was upon a photograph shown the witness prior to the in-court identification. The court overruled the objection and motion reasoning it to be within the jury's purview to determine what weight to give the testimony.
Troy Harrison, his wife Shirley, and Jimmy Dorman, also charged as principals, testified for the state. Each expected leniency for testifying but had no promise for such.
Dorman testified that on March 14, 1980, Young discussed the robbery with him and the next day, advised that he had bought two shotguns from The Trading Post in Mooreville and was going to rob a bank. Harrison testified that he and Dorman at Young's request assisted in sawing off the barrels of the guns and identified the weapons exhibited as the ones they altered.
The Harrisons testified a few days before the robbery, at Young's suggestion, they went to Lee Motors under the pretense of purchasing a car and had an extra key made to a blue and white car while trying it out. Dorman and Harrison testified on March 16, 1980, Young stole the car and parked it in his garage.
Shirley Harrison testified that on the day of the crime she heard Young ask her husband and Dorman to help rob the bank and saw Young leave shortly before the robbery in the blue and white car, carrying a shotgun, and wearing gloves and a coat. Shirley stated she and her husband then drove to Reid's Parking Lot, where Young had directed them to park and were joined by Dorman who told them Young was about to rob the bank and departed. Thereafter, about 3:00 p.m., Young arrived in the blue and white car, hurriedly got into the Harrisons' car with a gun and a money bag, stating how easy the robbery was and to "get the hell out of there." They drove Young to his house and continued to their home followed by Young. There the money was counted and divided before Young returned home with his portion. Dorman testified that Young called him to his house and gave him $500, which he later destroyed.
Later that night Young talked with Harrison by phone and told him to get rid of the money because the police had been to his house. Harrison was later arrested and the next morning his wife directed the police to the guns and money which she and her husband had buried. These items were exhibited at trial along with a cap, windbreaker, and green laundry bag.
B.H. Cason, the owner of The Trading Post, verified the sale of the shotguns and identified Young as the purchaser. He also identified the guns exhibited to him in court as those which he sold to Young.
Young did not testify but presented three witnesses who attested his hair color was *1057 presently the same as in March, 1980, although each conceded they did not see Young the day of the robbery. One of the witnesses was appellant's brother, Larry Young, who remained in the courtroom during the trial although "the rule" had been invoked. Over objection, the court permitted him to testify but instructed the jury they might consider his presence in the courtroom in determining what weight to give his testimony.
The appellant first contends the verdict was against the credible weight of the evidence. He argues the state failed to prove guilt beyond a reasonable doubt because the testimony of the accomplices must be viewed with great caution and suspicion and where uncorroborated, must not be unreasonable, improbable, self-contradictory or substantially impeached, citing Jones v. State, 368 So.2d 1265 (Miss. 1979).
We are of the opinion the accomplice's testimony was corroborated in that Mrs. Hoard identified Young as the man who robbed the bank, Cason identified Young as the purchaser of the shotguns found buried with the money, and the accomplice's testimony of Young's disguise as well as the automobile he fled in was corroborated by Williams and the bank employees.
In reviewing the accomplice's testimony we find minor discrepancies, not unusual for any witness, but do not think the testimony unreasonable, improbable, self-contradictory or substantially impeached as urged by appellant. We held in Maddox v. State, 230 Miss. 529, 533, 93 So.2d 649, 650 (1957), "Seldom do witnesses agree upon every detail. Indeed, their failure to do so is often strong evidence each is trying to accurately portray the situation as he saw it, and that is to the credit, rather than discredit, of the witnesses."
The credibility of the witnesses, the weight and worth of their testimony is, of course, for the jury to determine, Davis v. State, 320 So.2d 789 (Miss. 1975). Presently the jury was properly instructed on the nature of accomplice testimony, therefore, we conclude this assignment is without merit.
Young next contends the trial court erred by commenting on the weight to be given Larry Young's testimony where the court instructed the jury, "I am instructing you that you may consider the fact that he has been in the courtroom and has not been under the rule in considering what weight you wish to give his testimony."
The trial court permitted Young's brother to testify after sustaining an objection by the district attorney following Young's attorney's plea that he "goofed up" and only wanted to ask the witness one question. Further, when the court advised Young's attorney he would permit the testimony but would instruct the jury of the violation of the rule and that the jury might take that fact into consideration in weighing his testimony, Young's attorney replied without objection, "Thanks, very much, sir."
We are of the opinion the trial court was not charging the jury on the weight of the evidence, but rather was advising it of the infraction of the rule so the testimony might be considered with all factors in mind. Further, Young's attorney was told of the trial court's intention before the comment was given, to which Young's attorney assented without objection. Therefore, Young may not complain of the instruction on appeal. Pittman v. State, 297 So.2d 888 (Miss. 1974).
In appellant's third assignment he alleges the lower court erred in instructing the jury on its own motion that the Harrisons and Dorman are accomplices rather than "alleged accomplices" thereby instructing on a question of fact which appellant submits should have been decided by the jury.
The accomplice instructions submitted by Young contained language that the witness "is an accomplice" rather than "alleged accomplice" moreover, Young did not object to the instruction when amended by the court and given. In Reed v. State, 237 Miss. 23, 30, 112 So.2d 533, 535 (1959), we stated, "We will not reverse the trial court for an error created by the defendant's own instruction," and in Bieller v. State, 275 So.2d 97, 99 (Miss. 1973), we held, "the acceptance *1058 of an instruction after its amendment by the trial court amounts to a waiver of an objection to the amendment." We therefore find Young's third assignment without merit.
In Young's next assignment he argues the trial court erred in instructing the baliff outside Young's presence to inform the jury to "continue their deliberations" after the jury informed the bailiff they could not reach a verdict.
We are of the opinion the instruction was neither a substantive instruction on a question of law nor indicative of a requirement that the jury must continue deliberating until a verdict was reached. We approved the admonition "Please continue your deliberations" in Sharplin v. State, 330 So.2d 591, 596 (Miss. 1976), and we therefore think appellant was not prejudiced by his absence at the time the instruction was given.
In Young's next assignment for reversal he argues the trial court erred in denying a mistrial when the district attorney in closing argument commented:
Well, I want to know what more proof do you need than those witnesses and these shotguns and this green sack here that was flapping in the wind when he drove by there casing the bank before he robbed it. They only recovered Harrison's half of the money, evidently. I am sure Mr. Young knows where the other half is.
Young contends the comment implied the district attorney had personal knowledge of the case and thereby was a comment on a fact not in evidence, as well as being a comment on Young's failure to testify.
We are of the opinion the comment was a reasonable inference flowing from the uncontradicted testimony that Young took approximately half of the money and left the remainder with the Harrisons, and as such, was not a comment on a fact not in evidence or an intimation that the district attorney had personal knowledge of the case. In Chinn v. State, 276 So.2d 456, 459 (Miss. 1973), we held:
It has long been the rule that this Court recognizes the right and duty of an attorney to deduce and argue reasonable conclusions based upon the evidence, which are favorable to their clients, and they may do so whether conclusions so urged are weak or strong so long as legitimate, and it is the function of the jury to determine the logic and the weight of the conclusion.
We next address the contention that the comment constituted a comment on Young's failure to testify which if so, would be prohibited by Miss. Code Ann. § 13-1-9 (1972). After an examination of the cases under the foregoing statute, and review of the record and argument, we are of the opinion the chances are extremely remote that the jury understood the statement to be a comment on Young's failure to testify. We therefore find the trial court did not err in overruling appellant's motion for a mistrial.
In Young's sixth assignment he contends "Where the Appellant was charged with armed robbery and the actual perpetrator of the crime was completely masked at all times, the Court committed reversible error when the Court refused to strike the identification testimony of one of the witnesses; to grant the Appellant a mistrial where there was insufficient basis for the in court identification apart from an unduly suggestive pretrial photographic showup and the totality of the circumstances of the showup showed a very substantial likelihood of misidentification."
Young argues a conviction based on a tainted in-court identification would be set aside if, upon consideration of the totality of the circumstances of the improper identification procedure, there was a substantial likelihood of misidentification, citing Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).
However, before determining whether a substantial likelihood of misidentification under the totality of the circumstances exists, it must be found that Mrs. Hoard's in-court identification was tainted by a pretrial identification gained by a suggestive or improper procedure.
*1059 The morning after Young learned Mrs. Hoard first identified him from a photograph, the following transpired between Young's attorney and the trial judge:
BY MR. FARESE: Comes now the defendant and respectfully moves the Court to strike out all the testimony of the witness Mrs. Hoard on the grounds that Mrs. Hoard made an alleged identification of the defendant from the photograph before she came into Court and made an in-court identification. We move that the Court order all her testimony striken, and move for a mistrial also at this point.
BY JUDGE BIGGERS: What says the state? (At this time there was argument by the counsel for the State and counsel for the Defendant, after which the following was had.)
BY JUDGE BIGGERS: The Court is of the opinion that it is a question for the jury to determine what weight they wish to give this identification the way the question was framed to the witness, as the Court recalls, it was not based on whether she saw and identified a picture of this defendant some time after the robbery, but whether or not she saw, yesterday, the man who robbed her, in the courtroom. She pointed out she did. It is not clear in the record that this identification was based on having seen a picture; maybe she did, as she testified, point him out in a picture, the way the question was framed. She identified the man today as the man who robbed her, based on the identification in the courtroom.
BY MR. FARESE: How about my motion for production of that picture at this time. I would like to see that picture; I would like to recall Mrs. Hoard. She was shown a picture and she identified him from the picture.
BY JUDGE BIGGERS: She testified to that by the question: Do you see the man in the courtroom, can you identify the man in the courtroom who robbed you? Not: Can you see the man you picked out in the photograph? (At this time, there was further argument and then the following was had.)
BY JUDGE BIGGERS: All right, Mr. Farese, I have already ruled on the motion. I am inclined to grant your motion for production of the photograph, and all the other photographs that were shown her, from which she picked out the photograph of the Defendant. I assume Chief Crider still has the photograph he showed her.
We are of the opinion Young's motion to strike the testimony and for a mistrial, dealt not with an allegation that the in-court identification was gained as the result of a suggestive or improper pre-trial identification procedure, but was on the sole basis that the witness' in-court identification came after a pre-trial photographic identification. Under this circumstance the lower court did not err in ruling the credibility of Mrs. Hoard's identification was for the jury to weigh. McNeal v. State, 405 So.2d 90 (Miss. 1981). We reiterate as we stated in Chambers v. State, 402 So.2d 344, 347 (Miss. 1981), "We are content to rely upon the good sense and judgment of juries, for evidence with some element of untrustworthiness is customary grist for the jury mill. Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature."
In Young's seventh assignment he argues "Where the Appellant is charged with robbery of a local bank and the actual perpetrator of the robbery was completely masked during the entire robbery and where one of the four witnesses of the robbery identified the Appellant as the robber, it was a denial of due process and reversible error for the trial court to refuse the Appellant's pretrial discovery request to see the photographs shown to the witness who identified the Appellant and who had been shown a suggestive photographic showup."
Rule 4.06 of the Mississippi Uniform Criminal Rules of Circuit Court Practice which applies to pre-trial discovery, provides in part, "Upon a showing of materiality *1060 to the preparation of the defense, the court may require such other discovery to defense counsel as justice may require."
Young was provided all of the photographs prior to the presentation of his version of the case, and any prejudice that may have resulted from the trial court's discretionary denial of his pre-trial request was overcome by his enablement to fully examine the entire identification procedure in his case-in chief.
We have reviewed the entirety of the record and are convinced there was ample testimony to support the jury's verdict and that there was no prejudicial error necessitating a reversal.
AFFIRMED.
SUGG and WALKER, P.JJ., and BROOM, ROY NOBLE LEE, BOWLING, HAWKINS, DAN M. LEE and PRATHER, JJ., concur.