# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2008-CA-00750-SCT

*ROBERT LEE TYLER, JR.*

*v.*

*STATE OF MISSISSIPPI*


| | |
|---|---|
| DATE OF JUDGMENT: | 03/27/2008 |
| TRIAL JUDGE: | HON. ROBERT P. CHAMBERLIN |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | SANFORD E. KNOTT |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: JOHN R. HENRY |
| DISTRICT ATTORNEY: | JOHN W. CHAMPION |
| NATURE OF THE CASE: | CIVIL - POST CONVICTION RELIEF |
| DISPOSITION: | AFFIRMED - 08/20/2009 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE GRAVES, P.J., RANDOLPH AND PIERCE, JJ.

### PIERCE, JUSTICE, FOR THE COURT:

¶1.     This appeal comes to the Court from the Circuit Court of DeSoto County's denial of

Robert Lee Tyler, Jr.'s request for post-conviction relief (PCR). On December 5, 2007, this

Court granted Tyler's request for leave, permitting him to file his PCR motion in the circuit

court, and directed the circuit court to conduct an evidentiary hearing on two issues raised

in Tyler's petition. Those issues were: Whether the trial court erred in Tyler's criminal trial

in the manner it instructed the jury to continue deliberations, and whether Tyler's counsel

was ineffective for failing to raise an alleged due-process violation when the trial court

instructed the jury in the absence of Tyler and his trial counsel. Having reviewed the record

in this matter, we affirm the circuit court's ruling denying the motion for post-conviction collateral relief.

## FACTS AND PROCEEDINGS BELOW

¶2. In June 2002, a DeSoto County grand jury returned an indictment against Tyler for three counts of sexual battery, charging him with having sex with a minor. Tyler was found guilty by a jury of one count of sexual battery and was sentenced to a term of thirty years' imprisonment.

¶3. Tyler's criminal trial was held on July 9, 2003, with former Circuit Judge George Ready presiding. The jury began its deliberations the next morning, at which point Judge Ready instructed the parties not to leave the courthouse.

¶4. At around 11:30 a.m., when food was ordered for the jurors, Tyler's trial counsel, Johnny Walls, left the courthouse to eat lunch across the street. Tyler, who was out of jail on bond, also left the building but remained on the courthouse grounds outside. Shortly thereafter, and unbeknownst to either Tyler or Walls, the jury sent a note to Judge Ready which stated, "We are unable to reach a decision on all the grounds." According to Judge Ready, an effort was made to locate both Tyler and Walls inside the building. That effort failed, and Judge Ready instructed the jury to continue deliberating.

¶5. At approximately 2:05 p.m., the jury alerted the court that it had reached a verdict. Tyler, with his attorney present, was found guilty. After being polled, the jury was discharged. Tyler was taken into custody and transported to the DeSoto County jail. According to his testimony, upon arriving at the jail, Tyler called his attorney's office and was told by his attorney's secretary that he "had a hung jury."

2

¶6.     Walls thereafter filed a motion for judgment notwithstanding the verdict, or in the alternative a new trial, asserting, inter alia, that the trial court had erred in failing to allow Tyler to move for a mistrial when, prior to rendering its verdict, the jury sent out the note. A post-trial hearing was held on the motion, at which time Walls told the judge that he had given his business card to the bailiff, with his cell-phone number written on it, and had never received a call to come back to the courtroom. Judge Ready, on the record, said he had told the jury to continue its deliberations, adding that this is what the court always does. Judge Ready reminded Walls that he had been instructed "not to leave the courthouse while the jury was deliberating." He then told Walls that, even if he had been present, the result would not have been any different, as it is standard practice for defense counsel to move for a mistrial any time a jury informs the court that it is deadlocked, and that he "would not have granted a mistrial on the first note coming out saying they were deadlocked." Judge Ready then remarked that he recently had presided over another criminal matter similar in nature to Tyler's, in which he had received four notes from the jury indicating that it was deadlocked, but had instructed that jury continue its deliberations nonetheless.

¶7.     Tyler's motion was denied, and he appealed his conviction with different counsel, Thomas Lowe. The Court of Appeals found each issue argued in Tyler's direct appeal meritless, and affirmed the circuit court's judgment of conviction. *Taylor v. State,* 911 So. 2d 550, 556 (Miss. Ct. App. 2005), *cert. denied*, 920 So. 2d 1008 (Miss. 2005). In his direct appeal, Tyler did not raise the issue of whether the trial court had erred in instructing the jury without his trial counsel being present.

3

¶8. Following that judgment, and with new counsel, Sanford Knott, Tyler timely and properly filed a PCR application with this Court, in accordance with Mississippi Code Sections 99-39-5, 99-39-7, and 99-39-27. In that petition, Tyler presented an affidavit by his father, in which his father claimed to have heard the trial judge say to the bailiff, "Go back and tell them do not come out until they have a verdict." This Court granted Tyler leave to proceed in the circuit court on two of the issues raised in his PCR petition.

¶9. On February 25, 2008, an evidentiary hearing was conducted in the DeSoto County Circuit Court, Judge Robert Chamberlin presiding. The parties stipulated that no transcript could be found by the court reporter documenting the relevant communication between the trial judge and the jury. Tyler and his father (hereinafter Mr. Tyler) testified on Tyler's behalf. Sergeant Lynn Fly, the security bailiff at Tyler's criminal trial, and Judge Ready testified for the State.

¶10. Tyler testified that, soon after the jury began its deliberations, he walked outside and stood in front of the courthouse with his wife, where he remained until he was called back into the courtroom after the jury had reached a verdict. He testified that at no time prior to the verdict did he know the jury had communicated with Judge Ready that it was deadlocked. Tyler acknowledged that he was in the courtroom when Judge Ready instructed the parties not to leave the courthouse, but added that he did not think this meant he needed to remain inside the courthouse building.

¶11. Mr. Tyler testified that, after the jury had requested lunch, Walls had told them he was going to eat lunch across the street. Mr. Tyler said he and his wife then talked to Tyler for

4

a moment before going out to their car to eat a sandwich. Shortly thereafter, Mr. Tyler told his wife he was going back into the courtroom.

¶12.    At this point in his testimony, Mr. Tyler had trouble conveying exactly who had been in the courtroom when he and his wife returned. Initially, he said that only he, his wife, the judge and the bailiff had been present. He then indicated that nobody was in the courtroom when he and his wife arrived. When Judge Knott asked who had come in next, Mr. Tyler responded, the "jury." Judge Knott then asked, "The judge?" Mr. Tyler answered, "the bailiff." Later in his testimony, when Mr. Tyler was asked if the prosecution had been present, he indicated that it was present.

¶13.    According to Mr. Tyler, the bailiff then went to one of the side doors to the courtroom, "as if he was looking for someone." The bailiff came back and passed the judge a note. Mr. Tyler testified that the judge looked at it and said, "Go back and tell them do not come out until they have a verdict." Mr. Tyler identified Sergeant Lynn Fly, who was present in courtroom for Tyler's PCR evidentiary hearing, as the person who had handed the note to Judge Ready.

¶14.    On cross-examination, Mr. Tyler was asked if he saw what the note had said. Mr. Tyler indicated that he did not, adding, "The only time I saw a note, the attorney showed it to me. The State queried, "Which note was that, sir?" Mr. Tyler responded, "What the judge said." Mr. Tyler was then asked if the courtroom in which he was currently testifying, was the same courtroom in which his son's criminal trial had been held. Mr. Tyler said it was not.

5

¶15. On redirect, Mr. Tyler was asked when he had first mentioned what Judge Ready had said. Mr. Tyler said, "When I talked to you," referring to Judge Knott.

¶16. According to Sergeant Fly's testimony, Fly did not remember Tyler's criminal trial, and, to the best of his knowledge, could not recall having delivered a note or a message from the judge to the jury. Fly explained that his duty as bailiff is to provide security for the judge and for the court officers, and that he is always in uniform when working. Fly stated that it is his understanding that either the clerk of the court or the civilian bailiff would be the person responsible for transporting notes to and from the judge.

¶17. Lastly, Judge Ready testified that he could not recall exactly what he had told the jury in Tyler's criminal trial when he had received the note, but stated that his standard practice would have been either to write on the note, "Continue your deliberations," or to tell the bailiff to tell the jury to "continue deliberating." According to Judge Ready, he would have had two bailiffs under his charge during a criminal trial, a security bailiff and a civilian jury bailiff. Judge Ready said that, for Tyler's criminal trial, Fly was his security bailiff, and Wilbur Bates was his civilian bailiff. He explained that the civilian jury bailiff is an employee of the county whose duties include tending to a jury's needs, such as providing them with food and drinks and carrying messages back and forth between the court and the jury. Judge Ready said he would not have asked a sheriff's bailiff to send a note or to correspond with the jury. Judge Ready further stated that Tyler's criminal trial had been held in the same courtroom the evidentiary hearing was being conducted.

¶18. On cross-examination, Judge Ready was asked whether, during Tyler's post-trial motion hearing, he recalled discussing another criminal matter similar in nature to Tyler's.

6

Judge Ready responded in the affirmative, and said that he gave a *Sharplin* instruction in that instance, following three or four messages from the jury indicating that it could not reach a verdict. *Sharplin v. State,* 330 So. 2d 591 (Miss. 1976).

¶19. According to the transcript from the post-trial hearing, Judge Ready said he had received four notes from that jury that it was deadlocked  The transcript further shows that Judge Ready told Tyler's trial counsel, Walls, that it was unnecessary to give a *Sharplin* instruction in Tyler's case.

¶20. In his order denying Tyler's PCR motion, Judge Chamberlin found that Tyler had failed to meet his burden of proof, a preponderance of the evidence, that the trial court had erred in the manner by which it instructed the jury, or that Tyler had been denied his right to due process. Acknowledging that Tyler would have been entitled to a new trial, had the trial court in fact had instructed the jury in the manner alleged by Mr. Tyler, Judge Chamberlin found that Mr. Tyler's testimony "was impeached by the fact he could not remember the bailiff nor the courtroom, but could remember the exact words of a judge several years ago, which he did not remember until asked by counsel on post-conviction." The trial court determined Judge Ready's testimony to be more credible, finding that, even though Judge Ready could not recall the exact words he had used to instruct the jury, he was nonetheless candid with the trial court in his admission. The trial court also found that Tyler voluntarily had  waived his right to be present, and that reasonable efforts had been made to locate both him and Walls. Thus, the trial court determined that Judge Ready's ex parte communication did not prejudice Tyler so as to deny him a fundamentally fair trial.

**ANALYSIS**

7

**I.      Whether the Trial Court Erred in the Manner it Instructed the Jury in Tyler's Criminal Trial to Continue Deliberations.**

¶21.    Tyler avers that the trial court erred when it instructed the bailiff outside Tyler's presence to, "Go back and tell them do not come out until they have a verdict." He claims the evidence presented at the evidentiary hearing established proof by a preponderance of the evidence that such an instruction was given. Tyler also contends that it was error for the trial court to conclude that he waived his right to be present by his voluntary absence.

¶22.    In *Sharplin v. State,* 330 So. 2d 591 (Miss. 1976), this Court delineated two types of instructions a trial court may give to a deadlocked jury:

> If the trial judge feels that there is a likelihood that the jury might reach a verdict, he may return the jury for further deliberations by simply stating to the jurors: "Please continue your deliberations," or he may give the following instruction set forth in the tentative draft of Mississippi Mode Jury Instructions: Criminal, Volume 1, page 50.
>
> > I know that it is possible for honest men and women to have honest different opinions about the facts of a case, but, if it is possible to reconcile your differences of opinion and decide this case, then you should do so.
> >
> > Accordingly, I remind you that the court originally instructed you that the verdict of the jury must represent the considered judgment of each juror. It is your duty as jurors to consult with one another and to deliberate in view of reaching agreement if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion if you are convinced it is erroneous, but do not surrender your honest convictions as to the weight or effect of the evidence solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict. Please continue your deliberations.

We approve the foregoing instruction. It may be given in either criminal or civil cases when the trial judge is confronted by a hung jury. Following publication of this opinion the "Allen Charge" in any of its various forms should not be given. *See Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L. Ed. 528 (1896). (Footnotes omitted).

*Id.* at 596.

¶23. It is well-settled in this state that a trial judge must never attempt "to force a verdict by suggestive comments or coercive measures." *Sharplin,* 330 So. 2d at 596. Such would have been the case had Tyler's jury been instructed in the manner alleged. Due to the potential coercive effect on the jury's subsequent verdict, the error would have required a reversal. *Edlin v. State*, 523 So. 2d 42, 44-46 (Miss. 1988).

¶24. In *Edlin,* this Court reversed the defendant's conviction, where the record affirmatively disclosed that the trial court, after having been informed that the jury was deadlocked, had the bailiff tell the jury that "too much work has gone into this case." *Id. Edlin* found that "[t]he judge's message which the bailiff gave to the jurors exerts the same pernicious influence as the *Allen* charge, which this Court has repeatedly condemned[,]" and thus constituted incurable reversible error. *Edlin,* 523 So. 2d at 44.

¶25. However, in *Young v. State,* 420 So. 2d 1055, 1058 (Miss. 1982), this Court upheld the defendant's conviction despite the trial court's ex parte oral communication to the jury through the bailiff to "continue their deliberations" after the jury had informed the bailiff it could not reach a verdict. *Young* found that, because "the instruction was neither a substantive instruction on a question of law nor indicative of a requirement that the jury must continue deliberating until a verdict was reached[,]" the defendant was not prejudiced by not being present when the instruction was given. *Id.* at 1058; *see also Beckwith v. State,* 707

So. 2d 547, 588-89 (Miss. 1997) (relying on *Young, supra*, Court held that "the trial court's error in communicating with the jury ex parte did not deny Beckwith a fundamentally fair trial, and thus was harmless"). On Young's federal habeas corpus appeal, the Fifth Circuit affirmed the district court's denial of relief, stating:

> A defendant's constitutional right to be present derives, in essence, from the confrontation clause of the sixth amendment. *Gagnon,* 470 U.S. at 526, 105 S.Ct. at 1484. An ex parte communication with the jury, however, also may violate the defendant's right to due process "in some situations where the defendant is not actually confronting witnesses or evidence against him." *Id.* Such a communication amounts to a due process violation, however, only to "the extent that a fair and just hearing would be thwarted by [the defendant's] absence, and to that extent only." *Gagnon,* 470 U.S. at 526, 105 S. Ct. at 1484 (quoting *Snyder v. Massachusetts,* 291 U.S. 97, 105-06, 54 S. Ct. 330, 332-33, 78 L. Ed. 674 (1934)). When not secured by a specific constitutional provision, the defendant has a constitutional right to be present only when his presence "bears, or may fairly be assumed to bear a relation, reasonably substantial, to his opportunity to defend." *Snyder,* 291 U.S. at 106, 54 S. Ct. at 332. Because the ex parte instruction in the instant case does not implicate a specific constitutional provision, Young must demonstrate that, based on all the circumstances, the instruction prevented him from receiving a fair and just hearing. *See Snyder,* 291 U.S. at 116-17, 54 S. Ct. at 336 (the due process clause requires us to examine the particular conditions and results to determine whether the hearing was unfair).

*Young v. Herring,* 938 F.2d 543, 557-58 (5th Cir. 1991) (footnotes omitted), *cert denied,* 503 U.S. 940, 112 S. Ct. 1485, 117 L. Ed. 2d 627 (1992).

¶26. Here, the substance of the trial court's instruction was not made an issue until Tyler filed his PCR petition. Tyler thereafter was granted both leave and an evidentiary hearing to determine if in fact such an instruction had been given. If so, he would have been entitled to relief–in this case, a new trial. Miss. Code Ann. § 99-39-5(1)(e) (Rev. 2007). Because this claim was raised via a PCR petition, the burden of proof rested with Tyler to demonstrate

10

by a preponderance of evidence that the trial court did in fact instruct the jury in the manner alleged.

¶27. As was determined by the trial court, however, Tyler failed to meet this burden. The record supports this finding.

¶28. Mr. Tyler, who had disclosed to Knott what he allegedly had heard, was found by the trial court not to be a credible witness. While adamant that he remembered what the trial court actually had said, Mr. Tyler could not remember in which courtroom the instruction was given, or who exactly was there at the time the instruction was given. On the other hand, even though both Sergeant Fly and Judge Ready had their own difficulties with memory (Sergeant Fly did not remember Tyler's criminal trial, and Judge Ready could not recall exactly what he said upon receiving the note from the jury), the trial court nevertheless found their testimony more forthright and credible.

¶29. In any proceeding in which the trial judge sits as trier of fact, the judge "has sole authority for determining credibility of witnesses." *Mullins v. Ratcliff,* 515 So. 2d 1183, 1189 (Miss. 1987). Whether Judge Ready actually said what was alleged was a factual question for the trial court to decide. Thus, we cannot say that the trial court's factual finding, that Judge Ready did not instruct the jury in the manner alleged, was clearly erroneous. *Johns v. State*, 926 So. 2d 188, 194 (Miss. 2006) (A trial court's factual findings from an evidentiary hearing are reviewed by this Court under a clearly erroneous standard.) (citation omitted).

¶30. The trial court's conclusions that Tyler had waived his right to be present, to the extent that such a conclusion suggests that Tyler was foreclosed from asserting a fundamental

11

right violation, was erroneous. As stated in **Edlin,** *supra*, "the defendant is [] entitled to be represented by counsel during this very important procedure." **Id.** at 45. However, Tyler also had to demonstrate "based on all the circumstances" that he was prejudiced by his absence at the time the instruction was given, and thus was denied a fundamentally fair trial. **Beckwith,** 707 So. 2d at 588 (quoting **Young v. Herring,** 938 F.2d at 557-58).

¶31. We note here that this communication was unrecorded, as the State has stipulated. No Mississippi caselaw was found on whether this constitutes per se reversible error.[1] However, in **Rushen v. Spain,** 464 U.S. 114, 119, 104 S. Ct. 453, 456, 78 L. Ed. 2d 267 (1983), the Supreme Court, in a per curiam opinion, held that an unrecorded ex parte communication between the trial judge and a juror can be harmless error, if the prejudicial effect can be adequately determined by a post-trial hearing, so as "to mitigate constitutional error, if any, that has occurred." **Rushen**, 464 U.S. at 119-20 (citations omitted). The Supreme Court opined that:

> Our cases recognize that the right to personal presence at all critical stages of the trial and the right to counsel are fundamental rights of each criminal defendant. At the same time and without detracting from the fundamental importance of [these rights], we have implicitly recognized the necessity for preserving society's interest in the administration of criminal justice. Cases involving [such constitutional] deprivations are [therefore] subject to the general rule that remedies should be tailored to the injury suffered . . . and should not infringe on competing interests.
> . . .
>
> The lower federal courts' conclusion that an unrecorded *ex parte* communication between trial judge and juror can never be harmless error

---

[1] The oral ex parte communication in **Young v. State,** 420 So. 2d at 1058, apparently was recorded. However, there is no indication that the bailiff's communication with the jury also was recorded.

> ignores [the] day-to-day realities of courtroom life and undermines society's interest in the administration of criminal justice.

*Id.* at 117-19 (citations omitted) (emphasis added in the original).

¶32. At Tyler's post-trial hearing, argument was heard regarding Tyler's motion for a new trial, which charged that the trial court's ex parte communication had prevented him from moving for a mistrial. There was no assertion, either in the Tyler's motion or in his argument at the hearing, that the trial court had given an improper instruction. Thus, as previously mentioned, the substance of the ex parte communication was not in question. In response to Tyler's motion, Judge Ready stated that, upon receiving the note from the jury, he did what the court always does and instructed the jury to continue with its deliberations. He added that, in a recent case similar to Tyler's, he had received four notes from the jury before giving a *Sharplin* instruction, apparently referring to the second instruction set forth by the *Sharplin* Court, which allows the trial judge neutrally to urge a deadlocked jury to reconcile its differences. *See Sharplin,* 330 So. 2d at 596. Judge Ready explained that he did not give a *Sharplin* instruction in Tyler's case because he thought it unnecessary, and he indicated that had Tyler's counsel been present to enter an objection, it would have been overruled.

¶33. Based on our review of both the post-trial hearing and Tyler's PCR evidentiary hearing, there is no indication that an improper instruction, which presumptively influenced the jury's verdict, was given. Thus, even though we have an unrecorded ex parte communication, we find that *Young v. State* controls. Tyler has failed to demonstrate that he was prejudiced by his absence. Because Tyler had a full opportunity to demonstrate prejudice, we may fairly conclude that the unrecorded oral ex parte communication did not

13

deny him a fundamentally fair trial. ***Young,*** 420 So. 2d at 1058; *see also **Wilson v. State***, 853 So. 2d 822, 824 (Miss. Ct. App. 2003) (a communication between a judge and jury will not amount to cause for reversal of a conviction unless it can be determined that the judge influenced the jury's verdict).

¶34. We find that, while error, the unrecorded ex parte communication in this matter was harmless error. Therefore, this issue is without merit.

> **II.  Whether Both Trial and Appellate Counsel Rendered Ineffective Assistance in Failing to Argue That Tyler Was Denied a Fair Trial in Violation of Due Process at Law When the Trial Court Instructed the Jury in the Absence of the Defense.**

¶35. To establish ineffective assistance of counsel, a defendant must satisfy the two-prong test set forth in ***Strickland v. Washington,*** 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), adopted by this Court in ***Stringer v. State,*** 454 So. 2d 468, 476-77 (Miss.1984). This requires the defendant to show: (1) that his counsel's performance was deficient (fell below the objective standard of reasonableness), and (2) that the deficiency prejudiced his defense. ***Strickland***, 466 U.S. at 687. "The standard for considering ineffective assistance of counsel is the same for appellate performance as it is for trial performance." ***Culberson v. State,*** 580 So. 2d 1136, 1139 (Miss.1990), cert. denied, 502 U.S. 943, 112 S. Ct. 383, 116 L. Ed. 2d 334 (1991).

¶36. Tyler's ineffectiveness claim nonetheless fails under prong two, the so-called "prejudice prong." *See **Strickland,*** 466 U.S. 668, 697, 104 S. Ct. 2052, 80 L. Ed. 2d 674 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed"). Had Tyler's counsel

argued that no record was made of trial court's ex parte communication, or complained that Tyler was denied due process by not being present at the time the instruction was given, he still would have to demonstrate that he was prejudiced by these deficiencies. Based on the foregoing analysis in the previous issue, Tyler could not do so. Having already found that Tyler was not denied a fundamentally fair trial, this Court finds Tyler's ineffective assistance claim is without merit.

¶37. Likewise, even if it could be argued that Tyler's appellate counsel was deficient in not raising a due-process claim, the charge fails under the second prong of the *Strickland* test. *Strickland*, 466 U.S. at 687. Tyler could not have demonstrated that he was denied a fundamentally fair trial. *Young v. State,* 420 So. 2d at 1058; *see also Young v. Herring*, 938 F. 2d at 557-58.

¶38. Because there was no reason to assume the trial court delivered an instruction which influenced the jury's guilty verdict, it would not be objectively unreasonable for appellate counsel to fail to raise the issue on appeal.[2] Thus, Tyler's ineffective-assistance claim or appeal would fail under the first prong. For the sake of argument, if appellate counsel had reason to believe an improper instruction had been given pursuant to Mississippi Rule of Appellate Procedure 22(b), it would have been inappropriate for counsel to raise such an issue on direct appeal. Rule 22(b), in pertinent part, states: "Issues which may be raised in post-conviction proceedings may also be raised on direct appeal if such issues are based on facts fully apparent from the record." M.R.A.P. 22(b).

---

[2] It was not until Knotts' interview with Mr. Tyler in preparation for Tyler's PCR petition that the alleged improper instruction was disclosed.

¶39. We find that any assertion that an unrecorded ex parte instruction was given which had the potential of improperly influencing a verdict, cannot fully be supported by the record. Thus, a reviewing court would not be able to address the claim adequately on direct appeal. *Archer v. State,* 986 So. 2d 951, 955 (Miss. 2008). Tyler's assertion that he was denied effective appellate assistance also is without merit.

## CONCLUSION

¶40. For these reasons, the trial court's decision denying Tyler's motion for post-conviction collateral relief is affirmed.

¶41. **AFFIRMED**.

**WALLER, C.J., CARLSON, P.J., DICKINSON, RANDOLPH, LAMAR, KITCHENS AND CHANDLER, JJ., CONCUR. GRAVES, P.J., CONCURS IN PART AND IN RESULT WITHOUT SEPARATE WRITTEN OPINION.**